JAMES McDONALD *v.* STATE OF MISSISSIPPI.

1. CRIMINAL LAW.  *Instruction.  Murder.  Manslaughter.*

An instruction in a murder case which requires the jury to convict of murder where, on one phase of the testimony, the killing may have been done in the heat of passion on sudden provocation, is fatally erroneous.

2. SAME.  *Prosecuting officers warned.*

Instructions of doubtful propriety should not be asked by the state in criminal trials.

3. SAME.  *Change of venue.  Transmission of transcript.  Presumption.  Code* 1892, § 1412.

The presumption that the clerk of the circuit court from which the venue in a criminal case is changed did his duty, under code 1892, § 1412, by sending the certified copy of the proceedings by a special messenger to the clerk of the court to which the cause is referred, is not overcome by the testimony of the latter clerk that he received it by mail.

4. SAME.  *Quaere.*

Whether the statutory mode of transmitting copy of record in case of change of venue in criminal cases, code 1892, § 1412, be mandatory or directory, *quaere.*

FROM the circuit court of Union county.

HON. Z. M. STEPHENS, Judge.

James McDonald, the appellant, was indicted by the grand jury of Benton county for the murder of William Henry Harrison. He applied to the circuit court of that county for a change of venue, and the application was granted, the case

78 Miss.—24

being transferred for trial to the circuit court of Union county.. Thereupon the clerk of the circuit court of the first named county made a copy of the record in the cause, including the indictment, duly certifying to the same, and it was received and filed in the circuit court to which the cause had been re- ferred.

The statute (code 1892, § 1412) provides that the clerk, hav- ing made the transcript and certified it, shall "forward it, sealed up, by a special messenger or deliver it himself  .  .  . to the clerk of the circuit court to which the trial is ordered to be removed."

On the trial of the case, the following instruction (the one condemned by the supreme court) was given for the state:

Second instruction for state: "The court instructs the jury for the state that while premeditation and malice aforethought are necessary ingredients in the crime of murder, this does not, mean hatred or ill will, but means the same in law as deliber- ate design, and need not exist in the mind of the slayer for any definite time, not for days or hours, or even minutes, but if the design to kill existed but for an instant, at the very time the fatal blow was struck, this is sufficient premeditation to con- stitute the offense."

The appellant was convicted of murder, the jury fixing his punishment to be imprisonment in the penitentiary for life.  A motion for a new trial was made by defendant, in which, among other grounds therefor, the following was assigned:

" 2.  Because there is no legal copy of the indictment in this court and no evidence, as required by law, that the copy on which the trial was had was transmitted to this court in the manner prescribed by law, and in fact the said copy of indict- ment on which trial was had was not transmitted to this court, or the clerk thereof, in either of the manners prescribed by law."

On the hearing of this motion the clerk of the circuit court of Union county testified as a witness in appellant's behalf, and

swore that he had been clerk for twelve years, and that the record of the case came to him by mail. This was all the evidence, save the order on the minutes of Union circuit court, next herein quoted, on the subject of the transmission of the record from the one court to the other.

There appeared on the minutes of Union circuit court in this case the following entry: "This day came the district attorney who prosecutes for the state. Came also the defendant, James McDonald, in his own proper person and represented by counsel, and in open court, at the bar thereof. And it appearing that the venue in this case has been removed from Benton county to Union county, and it appearing to the satisfaction of the court that the clerk of the circuit court of Benton county, Mississippi, has made out a transcript of the caption of the record in said case, also the proceedings impaneling the grand jury, of the indictment, with the entries and indorsements thereon and all entries relative thereto in the record of his office, of the bonds and recognizances of the defendant, of the names of all the witnesses, and of all orders, judgments and other papers and proceedings belonging to or had in said cause, and has attached his certificate thereto, under his hand and with the seal of the court annexed, and has forwarded it, sealed up, as required by law, together with all the original subpœnas in the case, to the clerk of this court to which the trial has been ordered to be removed, on motion of the defendant the court ordered a special venire . . . . [which was drawn]. Said *venire facias* is made returnable, and the cause set for Friday, the twenty-sixth day of January, 1900."

The motion for a new trial was overruled by the court below and the defendant excepted and appealed to the supreme court.

*Mayes & Harris*, for appellant.

Section 1412 of the code expressly directs that when a change of venue is granted in a criminal case, the transcript of the record of the court where the indictment was found shall be

forwarded, sealed up, by a special messenger, or delivered by
the clerk himself.   The point in this case is that there is no
evidence whatever in the record that this transcript was for-
warded from Benton county to Union county by a special mes-
senger, as the law required should be done.   We submit that
the record must affirmatively show this fact, else the Union
county court had no jurisdiction to entertain the cause.   The
entry on the minutes shows that the clerk of the court did for-
ward the record, but it does not show that he forwarded it by
special messenger, as the law requires.   *Non constat* but that
he may have done so by mail or by express or in any other
manner not recognized by law.   It cannot be said that the
phrase '' as required by law,'' which occurs in the subsequent
line, will import that he forwarded the record by a special
messenger, first, because by every rule of construction, both
grammatical and rhetorical, that phrase must be referred to the
next nearest antecedent expression, which is that it was '' sealed
up,'' meaning thereby that it was sealed up as the law requires.
Secondly, even if the phrase '' as required by law '' be im-
properly referred to the next preceding phrase, '' and has for-
warded it,'' such reference and connection could not import
into the record in a capital case the idea that it was forwarded
in a special manner, all that expression would mean being that
the clerk forwarded the transcript as by law he was required
to forward the same.   It does not mean that he forwarded the
same by special messenger.   It is affirmatively shown by testi-
mony that the record was transmitted by the clerk of Benton
county to the clerk of Union county by mail.   The circuit court
of Union county was wholly without jurisdiction to try the case.

It cannot be said that the direction of this statute that the
transcript shall be by the clerk delivered in person or else de-
livered by a special messenger, is merely directory, and may
consequently be disregarded with impunity.   Comparison of
this statute with the other, which provides for the transmission
of the transcript in a civil case (code, § 656), will show at once

how sharply the attention of the legislature was directed to this matter, and how seriously they meant just what they said in respect to the method of transmission in criminal cases. In a civil case the transcript could be sent by mail, but in a criminal suit not. The intent of the legislature, or rather the reason for the distinction made, is obvious. It was to reduce to the minimum the opportunity for tampering in any way with the record. The delivery in the manner prescribed in the statute was jurisdictional. *Dial* v. *Oslen* (Ariz.), 36 Pac. Rep., 175; *App* v. *State*, 90 Ind., 73. And it is just one of those things which by a long line of decisions in our state the record is required affirmatively to show to have been done in a criminal case, because it is one of those important steps in criminal procedure which leads up to the final conviction, if the accused is to be convicted at all. B. & A. Digest, 326, and cases cited. Of course, there is no instance in which this rule should be more rigidly applied than in a murder case.

The court will note that this is not a mere case of omission, but there is a positive and affirmative showing, made by the clerk of Union county himself, that the law was violated and the transcript was sent by mail. Neither is the point here made covered by § 1413 of the code. . It is not a question of a defect in the transcript, but the question is whether there was any transcript at all such as the law contemplates, and whether the court in Union county had any jurisdiction.

The second point to which we ask the attention of the court is the error of the court below in giving the second instruction for the state. That instruction was plainly erroneous, and was terribly injurious, as the result proves. It manifestly procured the conviction of the defendant of murder in a case where the testimony, when analyzed, shows that if the defendant were guilty at all it was only a case of manslaughter.

The court first instructs the jury that premeditation and malice, although necessary ingredients, mean the same in law as deliberate design, and do not necessarily mean hatred or ill

will.    Having declared premeditation and malice aforethought equal to deliberate design, the instruction then goes one step further, and declares that, meaning the same thing as deliberate design, they need not exist in the mind of the slayer for any definite time, not even for minutes before the killing.    Then comes the fatal feature of the instruction.    It winds up with the terrible declaration that if the design to kill existed but for one instant, at the very time the fatal blow was struck, this is sufficient premeditation to constitute the offense.    It is not a question of this instruction having a tendency to prejudice the case in the minds of the jury.    The instruction is more deadly fatal than that.    It means nothing else than this, that if at the time the fatal blow is struck there is present a specific design to slay, the killing is murder.    It eliminates at one sweep from the law of homicide the whole domain of voluntary manslaughter.

*Monroe McClurg*, attorney-general, for appellee.

The latter clause of § 1413, code 1892, is imperative in requiring the accused to make timely objections or they must be considered by this court to have been waived.

The direction in § 1412 as to the method of transferring the record from one county to another is purely a matter of procedure, evidently intended to secure the delivery of the transcript, whatever it may be, rather than to secure its legal and technical perfection.    At most, it is not a question that extends to any of the constitutional guaranties of the appellant which may be pleaded in arrest of judgment.    The statute, so far as concerns the mode of transmission of the transcript, is purely directory.    Additional to all of this, the showing made is entirely insufficient to overturn the legal presumption that the identical transcript made and certified by the clerk of the circuit court of Benton county, was the one delivered to the clerk of the circuit court of Union county.    The showing made simply by the testimony of the clerk of Union county that he received the

transcript by mail, is not sufficient to overturn the legal presumption of law that the clerk of Benton county did his duty and the judgment of the court to that effect, even though that judgment is not written with exact precision. There is nothing in the record contradicting the idea that the clerk did his duty by delivering the transcript to a special messenger, and that the messenger, in violation of his duty, mailed it instead of delivering it by hand. The clerk of Union county merely testified that he received it by mail. The clerk of Benton county was not examined at all.

There is no objection of the kind to this record before trial. The instruction camplained of must not be looked at as the only instruction in the case, but read in the light of all of the other instructions and all of the testimony. So construed, it is without objection. It correctly announces the law on the subject of malice and was properly given. *Hawthorne* v. *State*, 58 Miss., 778; *Smith* v. *State, Ib.*, 867 (875).


WHITFIELD, C. J., delivered the opinion of the court.

The second instruction given for the state is fatally erroneous. The words "the offense," in the instruction, mean murder, and the effect of the instruction is to tell the jury that if "the design to kill" existed but an instant, at the very time the fatal blow was struck, the appellant was guilty of murder. Now, manifestly, the design to kill might exist, and the killing be merely manslaughter. This instruction pares away the rights of defendant, and requires the jury to convict of murder no matter what the provocation, and even though the killing was done in the heat of passion and on sudden provocation. Its vice is it eliminates manslaughter as a possible finding from the case, if only the design to kill existed as stated, etc. The case cited to uphold the instruction is *Hawthorne's case*, 58 Miss., 778. But the instruction there (pages 779, 780) had the necessary qualification absent here—"unless the jury believe from all the evidence in the case that the killing was manslaughter

or was done in necessary self-defense." We have often said, and we again repeat it, that if district attorneys would not attempt to charge defendants into the penitentiary by paring away, by instructions strained to the last point of legal tension, the rights of the defendants, they would not only secure as many convictions, but convictions not requiring to be set aside. We cannot too earnestly commend to district attorneys the wisdom of this course. Is it not far wiser to state the law in a few, a very few, instructions, stating the law clearly and surely within the defendant's rights, than to attempt the solution of the problem how near the state may go in its instructions to fatal error without erring? Surely it is, and this instruction is a striking example of the unwisdom of the latter course.

We do not think the testimony of the clerk overcomes the legal presumption that the clerk of Benton county did forward the transcript by special messenger, as required by law. For all the clerk says, the clerk of Benton county might have delivered the transcript to a special messenger. There is no complaint that there was any defect in the transcript, within the meaning of § 1413, code 1892. No objection is made to the transcript, which is duly certified by the clerk of Benton county. It is not pretended that the appellant was not tried on a copy of the indictment, and an accurate copy. The sole point is, precisely, that the manner in which the transfer of the record was effected is jurisdictional, and must appear affirmatively of record. We think, as stated, that it does affirmatively appear, and that the testimony of the circuit clerk of Union county that it "came to his hands by mail" does not necessarily negative the idea that the circuit clerk of Benton county did forward it by special messenger. It is not necessary to decide the precise alleged jurisdictional point, and we leave it open, with the statement, however, that we are strongly inclined to the view that the manner of the transfer is merely directory, and that the jurisdiction of the circuit court of the

county to which the venue has been changed attaches when the duly certified transcript is filed therein. If it be not a correct transcript, § 1413, code 1892, applies, and it can be perfected. If no point is made on the transcript, and, as here, only on the manner of the transfer, we are inclined strongly to hold that that is not jurisdictional.

*Reversed and remanded.*