520 So.2d 123 (1987)
Otis Lee WINDHAM
v.
STATE of Mississippi.
No. 57229.
Supreme Court of Mississippi.
November 12, 1987.
Rehearing Denied March 9, 1988.
Franklin M. Coleman, Meridian, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and ANDERSON and GRIFFIN, JJ.
HAWKINS, Presiding Justice, for the Court:
Otis Lee Windham appeals from his conviction in the circuit court of Kemper County of the murder of Albert Thurston Calvert and sentence to life imprisonment. Because the State was granted an instruction that the "deliberate design" essential to murder could be formed "at the very moment" of the fatal beating, and was in irreconcilable conflict with the manslaughter instructions, we reverse and remand.

FACTS
Calvert, 79, and Mrs. Betty Calvert, 78, had been married 51 years. Since 1938, Calvert had owned and run a small grocery store in the Zion Community of Kemper County. Calvert had no right arm; it had been cut off at the shoulder. The Calverts lived in a house situated up a little hill across the road from the old, wooden, tin-roofed store.
Two gas pumps stood side-by-side immediately in front of the store. Calvert kept two guns on the premises. A .22 caliber rifle leaned against the back of the entrance door. A small pistol resided in a holster hanging underneath the cash register. The guns were visible to all who came in the store and their presence seems to have been common knowledge.
On June 26, 1985, around 6:00 or 6:30 p.m. Otis Lee Windham, 21, pulled into Calvert's Grocery to buy gas. His car windows *124 were down. A silver hammer was inside Windham's car.
It is undisputed that Calvert and Windham discussed a $15 or $20 debt he owed to Calvert's Grocery. Wanda Hampton, while fishing in Mr. Calvert's pond with relatives, heard Mrs. Calvert say, "If you don't leave him alone, I'll call the sheriff." Mrs. Calvert struck Windham in the face. Windham struck her on the head. (She received six stitches.) Windham did something to Mr. Calvert to cause Mr. Calvert to die. Mrs. Calvert did not see what Windham did. Windham immediately departed in his car and eventually drove to the jail to tell the deputy sheriff what happened. At that point, he learned that Calvert had died. He then made the following statement:
Me and Mr. Calvert was arguing about a bill I owed him and I started pumping gas and Mrs. Calvert came from the house, she hit me in the mouth with her fist. That is when everything turned alose [sic]. I must have went to the car and got my hammer and then hit Mrs. Calvert. Then I grabbed her husband. I pushed him and got into my car and left... . Mr. Calvert never hit me but he started back in the store and that's when I grabbed him and throwed him. He was going from me and I caught him at the door.
Windham's trial testimony was that, as he started pumping gas, he was talking to Mr. Calvert when he heard somebody say something and he went to turn around and somebody hit him in the mouth. He reflexively hit the person with the gas nozzle, then turned around and looked, and saw that it was Mrs. Calvert. Then he turned around and looked at Mr. Calvert, and Mr. Calvert had started back inside the store. Windham caught him by his shirt and pulled him back around to the front of the car. He threw Mr. Calvert hard enough so he could get to his car and get away. Windham stopped Mr. Calvert from running to the store because he knew Mr. Calvert had two guns in there. Windham concluded by saying he was really scared because he knew Mr. Calvert was upset about his wife being hurt.
According to Mrs. Calvert, she tried to pry Windham's grip loose from her husband's arm. When Windham refused to release Mr. Calvert, she hit him on the cheekbone. Windham reached in his car and got a shiny hammer and hit her head hard enough to knock her out. As she regained consciousness, she saw her husband's body fall out in front of her "limber as a dishrag." She assumed that Windham hit Mr. Calvert on the head with the hammer but admitted that she did not see the act.
According to the state medical examiner, there were at least two distinct blows to the back of Calvert's head. The pathologist stated in his autopsy report that the cause of death was blunt, traumatic head injuries from a beating. He arrived at beating as the cause of the injuries because of the two distinct blows to the head. The injuries were "more than could be accounted for by simply falling and hitting his head and then another bounce."
It is Windham's contention that Mr. Calvert did not simply fall down, but that he was violently thrown to the ground and that, because Calvert was a big man (6'2"), he hit hard. The pathologist referred to a blunt instrument having struck the head, but considered concrete or asphalt pavement to be blunt instruments capable of causing blunt trauma. There is no eyewitness testimony to contradict Windham's account that he violently threw Mr. Calvert to the ground and Mr. Calvert's head bounced and hit a second time.

LAW
Under the unusual facts of this case, there were four possible statutory scenarios which the jury could have considered.
Miss. Code Ann. § 97-3-19(1)(a) (Supp. 1986) defines murder:
§ 97-3-19. Homicide; murder defined; capital murder.
(1) The killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases:

*125 (a) When done with deliberate design to effect the death of the person killed, or of any human being;
Miss. Code Ann. § 97-3-15 (Supp. 1986) lists eight different cases in which the killing of a human being is justifiable. One is:
§ 97-3-15. Homicide; justifiable homicide.
(1)(f) When committed in the lawful defense of one's own person or any other human being, where there shall be reasonable ground to apprehend a design to commit a felony or to do some great personal injury, and there shall be imminent danger of such design being accomplished.
Under Miss. Code Ann. § 97-3-17 (Supp. 1986), killing a human being is excusable:
§ 97-3-17. Homicide  excusable homicide.
The killing of any human being by the act, procurement, or omission of another shall be excusable:
* * * * * *
(b) When committed by accident and misfortune, in the heat of passion, upon any sudden and sufficient provocation;
(c) When committed upon any sudden combat, without undue advantage being taken, and without any dangerous weapon being used, and not done in a cruel or unusual manner.
Miss. Code Ann. § 97-3-35 (Supp. 1986) defines one form of manslaughter as:
§ 97-3-35. Homicide  killing without malice in the heat of passion.
The killing of a human being without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense, shall be manslaughter.
There was no request by either the State or Windham to instruct the jury on whether this was an excusable homicide under Miss. Code Ann. § 97-3-17, but such an instruction may very well be proper upon retrial.
There were a number of instructions given, correctly defining murder and manslaughter, and when a homicide was justifiable on the ground of lawful self-defense. Instruction S-1 given over the objection of Windham necessitates reversal:
The Court instructs the Jury that deliberate design, mentioned in the indictment, does not have to exist in the mind of the slayer for any given length of time; and if at the very moment of the fatal beating, the State has convinced you from the evidence beyond a reasonable doubt that the Defendant, Otis Lee Windham, on the 26th day of June, 1985, in Kemper County, Mississippi, beat with a hammer with the deliberate design to take the life of Albert Thurston Calvert, and not in necessary self-defense, real or apparent, then it was as truly deliberate design and the act was as truly murder as if the deliberate design had existed in the mind of the defendant for minutes, hours, days, weeks or even years. Then you shall find the Defendant guilty of Murder and the form of your verdict shall be as follows: [Emphasis added]
"We, the jury, find the Defendant guilty of Murder."
Write your verdict on a separate sheet of clean paper.
In conjunction with Instruction S-1, the jury was given Instruction S-5:
The Court instructs the Jury that Manslaughter is the wilful, felonious killing of a human being, without malice in the heat of passion, by the use of a dangerous weapon, without authority of law and not in necessary self-defense. [Emphasis added]
If you find from the evidence in this case, beyond a reasonable doubt, that on or about the 26th day of June, 1985, in Kemper County, Mississippi:
1. The deceased, Albert Thurston Calvert, was a living person,
and,
2. He died as a result of being struck with a hammer on the 26th day of June, 1985.
3. While the Defendant, Otis Lee Windham, and the deceased, Albert Thurston Calvert, were arguing and Otis Lee Windham struck Albert Thurston *126 Calvert with a hammer, in heat of passion.
4. Not in necessary self-defense and without authority of law;
Then you shall find the Defendant, Otis Lee Windham, guilty of Manslaughter and the form of your verdict may be as follows:
"We, the Jury, find the Defendant guilty of Manslaughter."
Write your verdict on a separate sheet of clean paper.[1]
By statute murder requires a "deliberate design to effect the death of the person killed." As defined by dictionaries the word "deliberate" always indicates full awareness of what one is doing, and generally implies careful and unhurried consideration of the consequences. "Design" means to calculate, plan, contemplate. These are general and accepted meanings of these words.
While it is no doubt true that a deliberate design to kill a person may be formed very quickly, and perhaps only moments before the act of consummating the intent, it is a contradiction in terms to state that a "deliberate design" can be formed at the very moment of the fatal act. Moreover, it is possible for a deliberate design to exist and the slaying nevertheless be no greater than manslaughter. See Bangren v. State, 196 Miss. 887, 897, 17 So.2d 599, 600 (1944). It can thus be seen that this special murder instruction granted the State rules out manslaughter, and is in hopeless conflict with the manslaughter instruction.
This Court first reversed on this type of instruction in McDonald v. State, 78 Miss. 369, 29 So. 171 (1900), in that it eliminated the possibility of the accused only being guilty of manslaughter.[2]
In Pittman v. State, 297 So.2d 888 (Miss. 1974), we reversed a conviction based upon an instruction authorizing a jury to convict of murder "if the deliberate design to kill exists but for an instant at the time of the fatal blow." Id. at 893. Justice Sugg, speaking for the Court, after noting that a deliberate design to kill might exist and the slaying still be manslaughter, held that the instruction was in "irreconcilable conflict" with the other instructions properly enunciating the law. The opinion concludes:
Instructions should be given only if they are applicable to the facts developed in the case being tried. Since every killing of a human being is murder unless facts are shown which would make the homicide justifiable, excusable or reduce it to manslaughter, instructions dealing with "deliberate design" should take into consideration and be limited by the facts developed by the evidence. If there are facts which, if believed by the jury, would make the homicide justifiable or excusable or reduce it to manslaughter, the instruction should be qualified to take these facts into consideration.
Id. at 893.
Likewise, in this case Instruction S-1 is in hopeless conflict with the manslaughter *127 instruction. See also Smith v. State, 463 So.2d 1028 (Miss. 1985); Scott v. State, 446 So.2d 580 (Miss. 1984); Cooley v. State, 346 So.2d 912 (Miss. 1977).
In Preston v. State, 25 Miss. 383 (1853), this Court held:
It is laid down, that the law having a regard for the frailty of human nature, will not put an act done upon a sudden impulse and in the heat of passion on the same footing in regard to guilt, with a deed deliberately performed. The indulgence shown by the law in such cases, proceeds on the supposition, that the reason or judgment of the party perpetrating the act has been temporarily suspended or overthrown by the sudden access of violent passion. But a high degree of sudden and resentful feeling will not alone palliate an act of homicide committed under its influence. It is essential that the excited and angry condition of the party committing the act, which would entitle him to the milder consideration of the law, should be superinduced by some insult, provocation, or injury, which would naturally and instantly produce, in the minds of ordinarily constituted men, the highest degree of exasperation....
Id. at 387.
Again, addressing manslaughter, this Court held in Calvin v. State, 175 Miss. 699, 168 So. 75 (1936):
The law of Mississippi is liberal on what constitutes manslaughter on the facts, and makes considerable allowance for the frailties of human passion; ... There must not only be passion and anger to reduce a crime to manslaughter, but there must be such circumstances as would indicate that a normal mind would be roused to the extent that the reason is overthrown and that passion usurps the mind destroying judgment.
Id. at 703, 168 So. 75.
That the slaying may be committed with a felonious intent and still be only manslaughter is shown by the following cases: Smith v. State, supra; Cooley v. State, supra; Pittman v. State, supra; Anderson v. State, 199 Miss. 885, 25 So.2d 474 (1946); Dalton v. State, 141 Miss. 841, 105 So. 784 (1925); Dye v. State, 127 Miss. 492, 90 So. 180 (1921).
A person may form an intent to kill from a sudden passion induced by insult, provocation or injury from another. In that moment of passion, while still enraged, if he slays the other person, the homicide may be manslaughter, even though it is not in necessary self-defense, depending upon the insult, provocation or injury causing the anger. Ordinarily, whether such a slaying is indeed murder or manslaughter is a question for the jury. Kinkead v. State, 190 So.2d 838 (Miss. 1966); Anderson v. State, supra.
As we have above noted, in this case the issues of whether Windham was guilty of murder or manslaughter, or whether the homicide was justifiable or excusable, were proper jury considerations. Because of the error in giving Instruction S-1, the cause is reversed and remanded.
We have considered the other assignments of error addressed to the sufficiency of the evidence and the Weathersby Rule, and find them without merit. See Wetz v. State, 503 So.2d 803, 808-809 (Miss. 1987).
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
NOTES
[1] Windham's request for a manslaughter instruction was granted as well. It reads:

The Court instructs the Jury that to make a killing justifiable on the grounds of self-defense, the danger to the Defendant must be either actual, present and urgent, or the Defendant must have reasonable grounds to apprehend a design on the part of the victim to kill him or to do him some great bodily harm, and in addition to this, he must have reasonable grounds to apprehend that there is imminent danger of such design being accomplished. It is for the Jury to determine the reasonableness of the ground upon which the Defendant acts.
[2] McDonald contained the following admonition:

We have often said, and we again repeat it, that if district attorneys would not attempt to charge defendants into the penitentiary by paring away, by instructions strained to the last point of legal tension, the rights of the defendants, they would not only secure as many convictions, but convictions not requiring to be set aside. We cannot too earnestly commend to district attorneys the wisdom of this course. Is it not far wiser to state the law in a few, a very few, instructions, stating the law clearly and surely within the defendant's rights, than to attempt the solution of the problem how near the state may go in its instructions to fatal error without erring? Surely it is, and this instruction is a striking example of the unwisdom of the latter course.
Id. 78 Miss. at 376, 29 So. 171.
In this case, except for the erroneous statements of the law, S-1 was surplusage.