# IN THE COURT OF APPEALS 04/08/97

# OF THE

# STATE OF MISSISSIPPI

## NO. 94-KA-01222 COA

**GEORGE T. CALLICUT**

**APPELLANT**

**v.**

**STATE OF MISSISSIPPI**

**APPELLEE**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. ANDREW CLEVELAND BAKER

COURT FROM WHICH APPEALED: PANOLA COUNTY CIRCUIT COURT

ATTORNEY FOR APPELLANT:

DAVID L. WALKER

ATTORNEY FOR APPELLEE:

OFFICE OF THE ATTORNEY GENERAL

BY: CHARLES W. MARIS, JR.

DISTRICT ATTORNEY: ROBERT L. WILLIAMS

NATURE OF THE CASE: MURDER

TRIAL COURT DISPOSITION: GUILTY; SENTENCED TO SERVE LIFE IMPRISONMENT IN THE MDOC AND PAY ALL COURT COSTS

BEFORE BRIDGES, C.J., DIAZ, AND KING, JJ.

DIAZ, J., FOR THE COURT:

George T. Callicut (Callicut) was tried and convicted in the Panola County Circuit Court of murder and sentenced to serve a term of life imprisonment in the Mississippi Department of Corrections. Aggrieved, Callicut appeals to this Court asserting the following issues: (1) that the verdict was against the overwhelming weight of the evidence; (2) that Callicut's trial counsel rendered him ineffective assistance of counsel at the trial; (3) that the court erred in allowing testimony by various witnesses, and excluding testimony of others; (4) that the court erred in refusing proposed jury instruction D-12; (5) that the cumulative errors violated Callicut's right to a fair trial. Finding no reversible error, we affirm.

## FACTS

On February 16, 1993, Callicut and his wife, Deborah were in the midst of an argument over an automobile when Callicut put a gun to Deborah's head and killed her. Eric Cathey, Deborah's cousin was standing outside on the front porch during the argument. Cathey testified that the argument was over who bought the automobile, and "who would ride in it". Cathey further testified that Callicut got the gun, put it to Deborah's head, said "die bitch", and shot her. After shooting Deborah, Callicut walked over to his neighbor, Steve Haley's house. Haley is a Mississippi Highway Patrolman. Callicut asked Haley to take him to jail because he had just shot and killed his own wife. Callicut told Haley that Deborah was being unfaithful to him, and that he did not know what else to do. Haley and Callicut were met by deputy sheriff Mark Whitten on the way to the Sheriff's office. Whitten brought Callicut the rest of the way to the Sheriff's office.

Meanwhile, the Callicut children notified Angelose Ales, Deborah's sister that their mother had been shot. When Ales arrived at the Callicut trailer, her brother Ezel was already there. He advised her not to touch anything at the crime scene. Ales saw Deborah sitting upright in a recliner, with hair curlers in her left hand, and a can of beer on her leg. Both Ales and Ezel testified that they did not see a knife around the chair. Ezel went on to testify about an earlier conversation he had with Callicut. Callicut had told Ezel that he was having marital problems and that Deborah had " done started again", and that he was going to "take care" of her.

Callicut's version of events are quite different. He testified that on February 16, 1993, he was at home watching television when the telephone rang. Apparently, it was George Arnold Campbell, a man with whom Callicut suspected Deborah to be having an affair. Callicut contends that Campbell called him to tell Callicut that he was having an affair with Deborah. When Callicut confronted Deborah, she told him that she was a grown woman and that she could do what she wanted. He then testified that she threatened to kill him with a butcher knife in her hand. At that point, according to Callicut, he grabbed the knife away from her, pushed her down, and shot her. He claims that Deborah's family put the curlers and beer can in her hand when they found her.

## DISCUSSION

### I. WEIGHT OF THE EVIDENCE

Callicut seems to use the language of the legal standard of review for the overwhelming weight of evidence interchangeably with the legal standard for the legal sufficiency of the evidence. Therefore, we will address both points.

This Court follows the well-established standard for reviewing the legal sufficiency of the evidence. Our authority to disrupt the jury's verdict is quite limited. *Carr v. State*, 655 So. 2d 824, 837 (Miss. 1995) (citations omitted). We must consider all the evidence in the light most consistent with the verdict. *Id.* (citations omitted). We give the prosecution the benefit of all favorable inferences from the evidence. *Id.* If the facts and inferences so considered point in favor of the accused with sufficient force that reasonable men could not have found that he was guilty beyond a reasonable doubt, reversal and discharge are required. *Id.* On the other hand, if there is substantial evidence of such quality and weight that, having in mind the burden of proof, reasonable and fair-minded jurors might have reached different conclusions, the jurors verdict is beyond our authority to disturb. *Id.*

Considering the evidence in the light most consistent with the verdict, we find that the evidence supports that verdict reached by reasonable and fair-minded jurors in the exercise of impartial judgment.

When we consider whether the jury's verdict is against the overwhelming weight of the evidence, we accept as true all evidence supporting the verdict. *Ellis v. State*, 667 So. 2d 599, 611 (Miss. 1995). Reversal is warranted only if there was an abuse of discretion in the circuit court's denial of a new trial. *Ellis*, 667 So. 2d at 611. Considering the evidence in light of the standard of review, we find no abuse of discretion. There is no merit to this issue.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Callicut asserts that his trial counsel's performance was ineffective, and was therefore a violation of the Sixth Amendment to the United States Constitution and Article 3, Section 26 of the Mississippi Constitution. With respect to claims of ineffective assistance of counsel, this Court follows the test set out in *Cabello v. State*, 524 So. 2d 313 (Miss. 1988):

> In *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674, 693 (1984), the United States Supreme Court established a two-prong test, required to prove the ineffective assistance of counsel: the defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense . . . . The burden of proof then rests with the movant . . . .Under the first prong, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." . . . In short, defense counsel is presumed competent. Under the second prong, even if counsel's conduct is "professionally unreasonable," the judgment stands "if the error had no effect on the judgment." ... Consequently, the movant must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." . . . There is no constitutional right then to errorless counsel . . . .

*Handley v. State*, 574 So. 2d 671, 683 (Miss. 1990) (quoting *Cabello v. State*, 524 So. 2d 313, 315 (Miss. 1988)).

Callicut cites a string of reasons as to why he feels that his trial counsel was ineffective. He argues that his trial counsel performed deficiently by not pursuing Callicut's motion for change of venue, that trial counsel was ineffective because he failed to file motions challenging the admissibility of testimony of police officers, that counsel ineffectively cross-examined the police officers, that counsel failed to object to jury instruction S-3, and a conclusory string of other instances where he contends his trial attorney rendered him ineffective assistance.

## A. Change of Venue

Callicut argues that counsel provided ineffective assistance of counsel when he failed to follow through on a motion for change of venue. Callicut contends that he was prejudiced because of pre-trial publicity. This falls under the discretion of the attorney in the realm of trial strategy. The fact that there has been widespread publicity in a county about a particular case does not necessarily mean that prudent defense counsel will want to have the case tried in another county. *Faraga v. State*, 514 So. 2d 295, 307 (Miss. 1987). In any event, in light of the evidence presented at trial, we are unable to find that the second prong of *Strickland* has been met.

## B. Admissibility of Testimony

Callicut contends that his attorney should have filed a motion in limine to preclude the testimony of State Trooper Steven Haley, and Officer Whitten. The general rule for a confession to be admissible is that it must be given voluntarily, and not as the result of any promises, threats or other inducements. *Hunter v. State*, 684 So. 2d 625, 633 (Miss. 1996). In the present case, Callicut voluntarily went over to Officer Haley's house, told him what had happened, and specifically asked Officer Haley to take him to the Sheriff's Office. His statement was clearly voluntary, and therefore, the trial judge did not commit manifest error when he ruled that Callicut's statements to Officer Haley were admissible.

Officer Whitten met Officer Haley and Callicut on their way to the Sheriff's Office. Officer Haley briefed Officer Whitten on what happened, and Callicut was transferred over to Officer Whitten's patrol car. With Callicut in the patrol car, Officer Whitten asked Callicut what happened to which he responded, "I'm just tired of her shit." No further questions were asked, nor information was given.

Officer Whitten should have read Callicut his rights when he put Callicut in the patrol car. It is clear that Callicut was in police custody at that point, however, the statement made by Callicut was not necessarily inculpatory, and it was of no consequence to the outcome of this case. Callicut had already voluntarily admitted to Officer Haley that he had shot his wife, and Officer Haley was escorting Callicut to the Sheriff's Office per Callicut's own request. The testimony of Officer Whitten regarding Callicut's statements to him resulted in no prejudice and was no more than harmless error. *Luster v. State*, 515 So. 2d 1177, 1179 (Miss. 1987).

## C. Cross-examination

Callicut states that he was denied effective assistance of counsel because trial counsel failed to

adequately cross-examine deputy sheriff Raymond Pearson. Callicut contends that counsel failed to ask Pearson whether he looked in the kitchen sink for the butcher knife which Callicut claims Deborah was wielding, and where he claims he put it.

Counsel's failure to file certain motions, call certain witnesses, ask certain questions, and make certain objections fall within the ambit of trial strategy. *Cole v. State*, 666 So. 2d 767, 777 (Miss. 1995). This Court will not second guess trial strategy decisions made by competent counsel. *King v. State*, 679 So. 2d 208, 211 (Miss. 1996). The fact that defense counsel did not question Officer Pearson about the knife does not render ineffective assistance of counsel. In fact, other witnesses later revealed that no knife was seen around the vicinity of where the victim was found.

### D. Jury Instruction

Callicut argues that trial counsel should have objected to jury instruction S-3 (as stated in the footnote). Callicut contends that by failing to object to this instruction, the jury was allowed to construe malice as something that can be formed at the moment of the fatal act.

The Supreme Court has condemned instructions that tell the jury in homicide cases that malice aforethought or deliberate design may be found to have existed in the mind of the accused but for an instant. *Windham v. State*, 520 So.2d 123, 126 (Miss. 1988). However, in the case at bar, the State's interpretation of the evidence showed that premeditation, or deliberate design existed well before the incident. Callicut's theory was that he shot in necessary self-defense. Furthermore, in looking at all the jury instructions as a whole, we see that instruction S-2 distinguishes murder from manslaughter, and instruction D-1A defines justifiable homicide based on self-defense. Based on this, we find that granting jury instruction S-3 was harmless error, and Callicut was not prejudiced by the fact that defense counsel failed to object.

### E. Objections

Callicut finally contends that he was rendered ineffective assistance of counsel because his trial attorney failed to object when the State asked Callicut why he thought law enforcement officers would lie. As stated above, the failure to make certain objections falls within the ambit of trial strategy. *Cole*, 666 So. 2d at 777. The line of questioning by the State was within the realm of proper cross-examination.

As to matters of defense strategy, attorneys are permitted wide latitude. *Edwards v. State*, 615 So. 2d 590, 597 (Miss. 1993); *Woodward v. State*, 635 So. 2d 805, 808-09 (Miss. 1993). Based on the record, we do not find that the attorney's performance was deficient. There is no merit to this issue.

### III. EVIDENCE

### A. Officer Steve Haley

Callicut contends that the trial court erred in allowing Officer Haley to testify about the statements made to him by Callicut. Callicut gave up his gun, and turned himself into Officer Haley, who was his neighbor. Officer Haley testified that on the day of the incident, he was at his house talking on the telephone when Callicut knocked on his front door. Haley greeted Callicut and asked him how he was doing to which Callicut responded, "I come [sic] over here to turn myself in to you. I just shot

and killed my wife." At that point, Callicut handed a nickel plated .380 caliber pistol to Haley. Haley invited Callicut into his house and then called the Sheriff's Office. After Haley called the Sheriff's Office, Callicut told him that he would rather have Haley take him to the Sheriff's Office. The two started out in Haley's vehicle and was eventually met by Officer Whitten. Between the time they got into Haley's car and the time they met Officer Whitten, Callicut told Haley that Deborah was going to take the kids away from him and that he did not know what else to do. Callicut objected at this point asserting that he was not given any Miranda rights.

As discussed above, these statements were admissible. There is no merit to this argument.

### B. Angelose Ales

Callicut argues that the trial judge erred by allowing Angelose Ales, the victim's sister, to testify that the psychiatrist treating Callicut's children recommended that the children not testify at trial. Callicut objected at trial contending that the best evidence would be the testimony of the treating psychiatrist regarding the diagnoses of the children. A review of the record reveals that Ms. Ales' testimony leading up to the objection merely explained the absence of the children. The testimony did not go into the psychiatrist's diagnoses. The judge then confirmed with the witness that she was the legal guardian of the children and that she was responsible for getting medical care for the children. The judge overruled the objection to the extent that Ms. Ales' had gone in explaining the absence of the children. We find no abuse of discretion.

### C. Darline Pegues

Darline Pegues testified that in September 1992, Callicut had come over to her house and placed a silver gun on the table. When she asked him why he needed a gun, he replied, "I may have to kill me a motherfucker. I may have to kill that bitch." Callicut repeated the statement to Darline's husband. When they asked him what he would do afterwards, he laughed and replied that he would probably turn himself in to the police. Callicut now argues that the lower court erred in admitting this testimony because it was too remote, and thus, irrelevant.

The determination of whether evidence is too remote to be relevant is ordinarily left the discretion of the trial judge. *Tillis v. State*, 661 So. 2d 1139, 1143 (Miss. 1995). His decision will not be reversed absent clear proof of abuse of discretion. *Id.* Furthermore, as far as relevancy goes, Rule 401 defines relevancy very broadly. It would appear that evidence of threats made less than five months before the murder would have a tendency to "make the existence of any fact that is of consequence to the determination of the action more probable or less probable." See *May v. State*, 524 So. 2d 957, 965 (Miss. 1988) (threats made 10 months before murder were held not to be too remote). The trial court acted well within its discretion in admitting these statements.

### D. Martha Reed

Callicut proffered the testimony of Martha Reed, a store owner who alleges that she had seen the victim leave Ms. Reed's store several years before the incident with a man, Jerome Jones. Stating the same standard used above, the relevancy and admissibility of evidence are largely within the discretion of the trial court and reversal may be had only where that discretion has been abused. *Davis v. State*, 684 So. 2d 643, 661 (Miss. 1996). After considering the proffered testimony, the trial

judge ruled that the evidence was irrelevant because it happened several years ago, and it wasn't the type of testimony that would be beneficial to the jury. The court was acting well within its discretion in excluding such testimony.

## IV. JURY INSTRUCTION D-12

Callicut next asserts that the lower court erred in refusing his proposed jury instruction D-12, a Weathersby instruction. The Weathersby rule requires the jury to accept the defendant's version of the events leading up to a homicide, if it is reasonable. *Nicholson v. State*, 672 So. 2d 744, 751 (Miss. 1996). Weathersby is not applicable if substantial evidence materially contradicts the defendant's version, through credible witnesses, physical facts, or commonly known facts. *Id.*

In the case at bar, Eric Cathey testified that he was standing on the Callicut's porch when Deborah got shot. He testified that he heard the couple arguing about a car, and that he saw George Callicut shaking his hand in Deborah's face. He then testified that he saw Callicut shoot Deborah in the head. Furthermore, the physical evidence found at the scene of the crime contradicts Callicut's version of events. Callicut contends that Deborah tried to attack him with a butcher knife when he shot her. The facts according to several other witnesses, however, reveal that Deborah was found sitting in a recliner with a beer in one hand and curlers in the other hand. Therefore, we find that because Eric Cathey testified that he witnessed the shooting, and further more, because the physical evidence contradicts the version Callicut offers, Weathersby is inapplicable.

## V. CUMULATIVE ERRORS

Finally Callicut asserts that the cumulative impact of all the errors in the trial denied him his constitutional right to a fair trial. After a thorough review of the record and each assignment of error, we have found no error warranting reversal. The cumulative effect of any errors in this case was harmless beyond a reasonable doubt. *See Carr v. State*, 655 So. 2d 824, 858 (Miss. 1995).

Finding no merit to this appeal, we affirm the judgment of the lower court.

**THE JUDGMENT OF CONVICTION OF MURDER IN THE PANOLA COUNTY CIRCUIT COURT AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THIS APPEAL ARE TAXED TO PANOLA COUNTY.**

**BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, HERRING, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR.**