### PRESTON *v.* THE STATE, 25 Miss. Rep., 383.

#### HOMICIDE.

Charges given or withheld by the court, in criminal cases, are not necessarily a part of the record. Hence, they will not be noticed by the appellate court unless they are embodied in a bill of exceptions. But papers, which are not legitimately parts of the record, when transcribed into the record, and referred to by counsel, in his bill of exceptions, will be noticed, when there is no doubt of their identity.

A high degree of sudden and resentful feeling will not alone palliate an act of homicide committed under its influence. It is essential that the excited and angry condition of the party committing the act, which would entitle him to a milder consideration of the law, should be superinduced by some insult, provocation, or injury, which would instantly produce in the minds of ordinary men the highest degree of exasperation.

Error to Greene circuit court. WATTS, J.

The plaintiff in error, Preston, was convicted of the murder of David Turner, at the May term, 1852, of the circuit court of Greene county. Many instructions were asked and given for the state and the accused; but the following one (the 4th), which was asked by the counsel for the defence, was refused by the court; and excepted to by accused: "If the jury believe from the evidence, that the prisoner killed the accused on a sudden heat, though voluntarily; that he had been greatly provoked, and had received other great indignities, and acted under passion, the law pays that regard to human frailty as not to put a hasty and a deliberate act on the same footing. And after being greatly provoked, or having received other great indignities, though no absolute necessity for the act, yet it is not murder, but manslaughter, there being no previous malice."

The jury found the accused guilty of murder. A full statement of the facts of the case will be found in the opinion of the court. The accused made a motion for a new trial, which was overruled by the court below, and he then prayed a writ of error to this court.

*A. Burwell*, for plaintiff in error.

The instruction referred to is clearly proper, and should have been given, unless wholly inapplicable to the case before the court. On the part of the state, (see third instruction for state,) the jury were told by the judge, in substance, that killing with a deadly weapon, in all cases, is murder, and the refusal of the court to give the fourth instruction asked by defendant, so pointed this instruction, that the jury were not left at liberty to find any other verdict, without flying directly in the face of the instructions. Take the instructions together, and on what principles was the defendant tried? It seems to me, on the hard rule sometimes laid down in the text books, that killing with a deadly weapon is murder, and that insults, however grievous, will not in any case reduce the killing in the heat of passion, there being no previous malice, from murder to manslaughter, if a deadly weapon is used.

But it is said, that the law may be so abstractly; but the case justified the refusal of the fourth, and the giving of the other instructions. This mode of argument seems to me to take for granted the very issue to be tried, and which it was the province of the jury to try, according to correct principles of law laid down by the court. The main issue is "malice aforethought." Can this court undertake to say how far the jury were misled by the instructions? or what their verdict would have been under a proper exposition of the law?

It is proved in the case, that the defendant was an honest man; this was ruled out, it is true. It is then shown, that the deceased had accused the defendant of stealing and other offences. The defendant called on deceased, and they both said, "they could stand it no longer," and the deceased having on his shot-bag, stepped back, and the defendant fired and killed him. Now, what is the fair application of the words used, "I can stand it no longer;" and what was the subject of discussion be-

tween these men ?    It must have been the previous accusations of theft, etc.    The defendant, as an honest man, may have been suddenly fired with indignation, and seeing the man who had unjustly accused him, with a part of his armor on, step back, the defendant may have (in the heat of passion, without previous malice, but under the impression that deceased was about to procure the gun, without which the shot-bag was a very useless appendage) used a deadly weapon, and though not justifiable, may not be guilty of murder.    It surely is not for the court to say, that the evidence must make out a case in which the instructions will entitle the party to a verdict; or that, if the instructions had been given, the party ought still to have been convicted.    The rule is, that the instructions must be wholly inapplicable, such as could not possibly affect the result, or it will be error to refuse to give them.    The correct practice is stated in Lambeth v. State, 23 Miss. 356.    The court will not determine whether the instruction is intimately or remotely connected with the case, or that it will have a certain effect on the minds of the jury.    To do so, would be to usurp their province.    I ask the accused may have a trial according to the correct rules of law.

*D. C. Glenn*, attorney general.

SMITH, C. J. :

The prisoner at the bar was tried in the circuit court of Greene county, and convicted of the crime of murder.    A motion was made for a new trial, which was overruled; and sentence of death was pronounced.    The bill of exceptions filed to the judgment of the court on the motion, contains the evidence adduced on the trial.    The instructions which were given or refused, are transcribed into the record, and are referred to in the bill.    The objection mainly relied on by the counsel for the prisoner, refers to the fourth instruction requested by the defendant, and refused by the court.    That instruction is in the following words, to wit: " If the jury believe, from the evidence, that the prisoner killed the deceased on a sudden heat, though voluntarily; that he had been greatly provoked, and had received other great indignities, and acted under passion, the law

pays that regard to human frailty as not to put a hasty and a deliberate act on the same footing.    And after being greatly provoked, or having received other great indignities, though no absolute necessity for the act ; yet it was not murder, but manslaughter, there being no previous malice."

This instruction was the only one requested by the prisoner, and which was denied by the court.    And it is insisted by the attorney-general, that neither this charge, nor any instruction given at the instance of the district attorney on the trial below, can be noticed by this court.

The ground of this objection is, that the charges objected to were not made part of the record by bill of exceptions taken at the time, nor embodied in the bill filed to the decision on the motion for a new trial.

It is settled, that charges given or withheld by the court in prosecutions for crimes or misdemeanors, are not necessarily a part of the record.    Hence, that they will not be noticed by this court, unless they are placed there by means of a bill of exceptions.    This rule applies, generally, to all proceedings in the lower courts, which are not by law made matters of record.   But it has been repeatedly held by this court, that papers, which are not legitimately parts of the record, if transcribed into it by the clerk, will be noticed if referred to by so apt a description in the bill of exceptions, that there can be no doubt as to their identity.    If this rule were rigidly applied in the case at bar, we should be bound to hold, that no notice could be taken of any of the charges given or withheld on the trial below.    But as it is probable, that the instructions were originally copied into the bill of exceptions, and omitted in the transcript before us by the mistake or inadvertence of the clerk, we will consider the objection urged to the refusal of the court to give the instruction above quoted.

It is laid down, that the law having a regard for the frailty of human nature, will not put an act done upon a sudden impulse and in the heat of passion, on the same footing in regard to guilt, with a deed deliberately performed.    The indulgence shown by the law in such cases, proceeds on the supposition, that the reason or judgment of the party perpetrating the act has been tempora-

rily suspended or overthrown by the sudden access of violent passion. But a high degree of sudden and resentful feeling will not alone palliate an act of homicide committed under its influence. It is essential that the excited and angry condition of the party committing the act, which would entitle him to the milder consideration of the law, should be superinduced by some insult, provocation, or injury, which would naturally and instantly produce, in the minds of ordinarily constituted men, the highest degree of exasperation. Cases are given in books to illustrate the principle. In Blackstone's Commentaries it is said: "If a man be greatly provoked as by pulling his nose, or other great indignity, and immediately kills the aggressor, though this is not excusable *se defendo*, since there is no absolute necessity for doing it to preserve himself; yet it is neither murder, for there is no previous malice; but is manslaughter." So, also, if a man takes another in the act of adultery with his wife, and kills him upon the spot, it is not at common law ranked in the class of justifiable homicide, but is held to be manslaughter in the lowest degree. 4 Black. Com., 192.

It is, therefore, true, that an act of homicide committed under the influence of sudden, great, or violent resentment, will be looked upon by the law with less disfavor than a similar deed perpetrated with deliberation; but it is equally true, that the cause of provocation must be one deemed by the law sufficient.

Taken by this rule, the court did not err in refusing the instruction above quoted. The terms employed were too broad and unqualified. A man might be subjected to great indignities, and be greatly provoked, and still not stand acquitted of murder, if he should instantly slay the aggressor. But the principal objection to the charge is, that it left to the jury to determine not only the degree of provocation under which the prisoner acted, but the sufficiency of the cause of that provocation. The instruction would have left the character of the provocation, insult, or injury to which he was subjected, to be determined by each juror according to no fixed standard, but according to his peculiar tastes or habits of thought.

This charge was, in substance, contained in the eighth instruc-

tion asked for by the prisoner, which was given. That charge is as follows: " It is true, if a man kill another, without any or instant or considerable provocation, the law implies motive, and the homicide is murder; but if the provocation were great, and such as must have greatly provoked him, the killing is manslaughter only."

This instruction certainly laid down a rule for the guidance of the jury, sufficiently favorable to the prisoner. But if it were conceded, that the instruction was correct as stating a general or abstract principle of law, it may, nevertheless, have been perfectly proper for the court to refuse it. The rule on the subject is, that the court is not bound to charge on abstract questions of law, or to state legal principles to a jury, however true they may be, which are not applicable to the facts nor pertinent to the questions raised by the evidence submitted to them. And accordingly it is contended by the attorney general, that the said instruction, for that reason, was properly withheld.

To determine the validity of this objection, we must recur to the evidence adduced on the trial, and which is contained in the bill of exceptions.

Nancy Turner, who was the wife of the deceased, testified, that the killing took place in Greene county, in this state, about one hour before sundown; that she and deceased were sitting under a tree in the back yard, in conversation, when the prisoner came to the gate, hallooed, and called Turner, who went to him; witness followed soon afterwards; when she came in view of them they were talking; prisoner on the outside of the fence and Turner on the inside. Witness could not understand what they said, for they were conversing in a low tone of voice; only heard prisoner say to Turner, that he could not stand it; and Turner answered, that he could not stand it either. Turner then stepped one or two paces, turning his left side to the prisoner, in the direction witness was coming; the prisoner stepped back one or two paces, threw up his gun, and fired, and so soon that she could not speak. Witness was near enough to catch the deceased in her arms as he fell. The deceased called her by name, said he was gone, and instantly expired. The deceased was shot in the left arm, which was broken; the ball

penetrating the body under the arm-pit. No one was present but witness, the deceased, and the prisoner. This is the substance of Mrs. Turner's evidence delivered on her examination in chief. On the cross-examination, no additional fact of any importance was elicited in regard to the circumstances of the meeting between the deceased and the prisoner.

Nancy Green testified that the killing happened on the evening of the 27th of December, 1851, in Greene county; witness was in the kitchen and heard some one call; she went to the door; saw Turner pass through the yard to the fence; she did not understand what they said, only that he could not stand it, and Turner said, I neither can stand it. Turner stepped towards his wife, and Preston shot him; Turner was on the inside of his fence, and Preston on the outside, near the gate. When Preston shot, Turner immediately fell into his wife's arms, and Preston then turned and ran off. Upon cross-examination, this witness stated no additional material fact connected with the killing.

These two persons were the only witnesses of the transaction. By their testimony alone, we are to determine whether the instruction prayed for and refused was relevant to the facts of the case. The testimony is very short. The facts are simply and clearly stated, and leave no ground for the assumption, that such a provocation was offered to the prisoner, which, according to the law applicable to the case, could palliate the act which he then committed.

We hold, therefore, that the court did not err in refusing to give said instruction.

In regard to the motion for a new trial, we deem it unnecessary to go into a minute examination of the evidence. It is sufficient to remark, that upon the most favorable view of the question for the prisoner, we are unable to perceive any ground upon which we could be warranted in granting a new trial.

We are compelled, therefore, however painful the duty, to affirm the judgment.