Charles Darren Barnett appeals his conviction of murder in the circuit court of Sunflower County and sentence to life imprisonment. The issues we address are the failure of the court to grant a manslaughter instruction, and granting a flight instruction to the State. For the reasons stated we find no reversible error and affirm.
 FACTS
On Sunday, March 29, 1987, Robert Harmon, Willie Young and Jason Fincher were riding around Ruleville drinking beer and smoking marijuana. They stopped at a business called Tommy's Country Corner; Barnett was there at the time.
Barnett got into the car with the three and Young was going to drive him home. While in the car he and Harmon got into an argument about who could whip the other. Upon arrival at Barnett's home, a trailer, the argument continued. Barnett lived in one trailer, his father Buford Barnett, together with his live-in girl friend Beverly Rischman, lived in another.
Barnett's first cousin David got into the argument, the latter removing his shirt and informing Harmon that if he wanted to fight Barnett, he would have to fight him, David, first.
Harmon went to the car, got a hair brush and threw it down, and then pulled out a knife. Barnett picked up a shovel, and David Barnett went behind the trailers and came back with a metal pipe.
According to some of the witnesses, Barnett tapped Harmon with the shovel, and according to others, they did not see it. David Barnett remained standing there with the pipe.
According to the State's witnesses, Barnett then told Harmon, "Hold up, I've got something for you." It is undisputed that he then went into his father Buford Barnett's trailer and got a single-shot .22 rifle, and then went into his own trailer and got a bullet. He came back outside and shot Harmon, who died as a result of the wound. It is disputed as to whether Harmon *Page 1379 
was making any advance at all upon Barnett when he shot him. While Young and Jason Fincher said he was not, David Barnett and Shirley Miller, who was living with Barnett at the time, testified Harmon was advancing on Barnett with a knife when he was shot. James Barnett, Barnett's brother, and Rischman also testified Harmon was advancing on Barnett with a knife when he shot him.
Harmon was carried to the hospital. Robert Malone, a local policeman, went to the scene to investigate, and was told by Barnett, "Mr. Malone, I shot him in self defense. I shot him in self defense." Malone testified that Barnett told him Harmon "was coming on him with a knife."
Barnett did not testify in his own behalf.
 LAW MANSLAUGHTER INSTRUCTION
Barnett's first assignment of error is the refusal of the circuit court to grant requested instruction D-17:
 The Court instructs the Jury that if you find beyond a reasonable doubt that Robert Harmon III died as a result of being shot by Charles Darren Barnett while Charles Darren Barnett acted in the heat of passion and not in necessary self-defense, then you should find Charles Darren Barnett not guilty of murder but guilty of manslaughter.
Miss. Code Ann. § 97-3-35 (1972) provides:
 The killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense, shall be manslaughter.
The issue of self defense was fully presented to the jury both in the State's and defense's instructions. The only question then is whether there was not a deliberate slaying but rather one induced by the heat of passion. A deliberate slaying can be justified, of course, if done in lawful self defense. But was this slaying carried out as a result of a provoked rage?
Barnett did not testify, and the only account we have of the slaying is his statement to the officer and the testimony of eyewitnesses.
There simply is no evidence upon which any jury could rationally conclude that Barnett shot Harmon as a result of provoked rage. There was no gross insult, and the two were not engaged in physical combat.
In Preston v. State, 25 Miss. 383 (1853), we held:
 It is laid down, that the law having a regard for the frailty of human nature, will not put an act done upon a sudden impulse and in the heat of passion on the same footing in regard to guilt, with a deed deliberately performed. The indulgence shown by the law in such cases, proceeds on the supposition, that the reason or judgment of the party perpetrating the act has been temporarily suspended or overthrown by the sudden access of violent passion. But a high degree of sudden and resentful feeling will not alone palliate an act of homicide committed under its influence. It is essential that the excited and angry condition of the party committing the act, which would entitle him to the milder consideration of the law, should be superinduced by some insult, provocation, or injury, which would naturally and instantly produce, in the minds of ordinarily constituted men, the highest degree of exasperation. . . . [emphasis added]
Id. at 387.
Again, addressing manslaughter, we held in Calvin v. State,175 Miss. 699, 168 So. 75 (1936):
 The law of Mississippi is liberal on what constitutes manslaughter on the facts, and makes considerable allowance for the frailties of human passion; . . . There must not only be passion and anger to reduce a crime to manslaughter, but there must be such circumstances *Page 1380 as would indicate that a normal mind would be roused to the extent that the reason is overthrown and that passion usurps the mind destroying judgment. [emphasis added]
Id. at 703, 168 So. at 76.
In Windham v. State, 520 So.2d 123, 127 (Miss. 1987), following a description of the various forms of homicide, we concluded that as to manslaughter, "Ordinarily, whether such a slaying is indeed murder or manslaughter is a question for the jury."
Having regard for the "frailty of human nature," Preston v.State, supra, and the liberality of giving a manslaughter instruction when there is any credible evidence to support it, we have nevertheless held in Cook v. State, 467 So.2d 203 (Miss. 1985):
 It is certainly true that in a murder prosecution manslaughter instructions should not indiscriminately be given. Heat of passion being an affirmative element of manslaughter not present in murder, that type of manslaughter instruction should not be given unless there is substantial evidence to support it. Fairchild v. State, 459 So.2d 793, 801-802 (Miss. 1984). [emphasis added]
Cook, at 209.
We conclude, as we must, that there simply was no evidence in this record to support a manslaughter instruction.
 INSTRUCTION S-3
Barnett complains of instruction S-3 granted the State:
 The Court instructs the Jury that if you believe from the evidence in this case beyond a reasonable doubt that the Defendant, Charles Barnett, armed himself with a deadly weapon and sought Robert Harmon, III. with the formed felonious intention of invoking a difficulty with Robert Harmon, or brought on, or voluntarily entered into any difficulty with Robert Harmon with the designed and felonious intent to cause serious bodily harm to Robert Harmon then the Defendant, Charles Darren Barnett, cannot invoke the law of self-defense no matter how imminent the peril in which Barnett found himself.
When this instruction was presented to the circuit court, the record reveals:
 BY MR. STILLIONS:
 For the record, Your Honor, we will object to it.
 BY THE COURT:
 Well, I believe there is evidence in the record to support that element which leaves it up to the jury to decide this; therefore, I am going to give it. I believe there is ample evidence under Miss Bridges' questioning of these witnesses that permits that instruction.
Rule 5.03 of the Uniform Criminal Rules requires each party to serve on the other at least 24 hours prior to trial his proposed instructions. It also requires the objecting party to dictate into the record "specific objection" to the instruction, and to "specifically point out the grounds for the objection." There simply is no justification for counsel to make a general objection to any proposed instruction when he has time to review and ascertain in advance of submission of the instruction to the circuit judge the specific ground of his objection. If for some good reason he has not had an opportunity to determine a specific ground, he at least owes the circuit judge the courtesy of requesting a short recess in order to make his objection specific. A general objection in most cases is tantamount to no objection.
We therefore hold that the error in granting this instruction, if any, was waived. Watson v. State, 483 So.2d 1326, 1329 (Miss. 1986); Bright v. State, 349 So.2d 503, 504-505 (Miss. 1977). Moreover, under the facts of this case, we are not persuaded that giving this instruction amounted to error, and certainly not reversible error. Reid v. State, 301 So.2d 561, 564 (Miss. 1974); Thomas v. State, 61 Miss. 60 (1883). Cf.Craft v. State, *Page 1381 271 So.2d 735 (Miss. 1973). There was ample evidence for the jury to conclude Barnett, when not in any danger, went into one trailer, got a rifle, then went into another trailer and got a bullet, and returned to the scene and shot Harmon.
This case is factually distinguishable from Williams v.State, 482 So.2d 1136 (Miss. 1986), in which the defendant, although armed, made no attempt to shoot the victim even following a protracted argument, and being shoved out of the apartment. It was only when the victim's pistol snapped in his effort to shoot the defendant that the defendant finally fired. In this case the testimony was that Barnett, when in no physical danger, went into both trailers and after fully arming himself, went back out, and in a matter of seconds, at most, shot and killed Harmon. We do not retreat from what we have repeatedly stated, that only in cases where the proof substantiates the accused was not in any danger when he armed himself, and from which the proof will show that he armed himself for the very purpose of shooting the victim, that such an instruction may be properly considered by the court.
Barnett complains of the court's refusal of other instructions, but we have carefully examined this record and all instructions granted, and find that the jury was fully instructed as to all elements of the crime and Barnett's defense.
 BARNETT'S MENTAL RETARDATION
Arguing it was admissible under Rule 701 of the Mississippi Rules of Evidence, defense counsel sought through James Barnett to offer evidence that Barnett was "retarded and slow," and suffered from epilepsy, and took the drug Dilantin. The circuit judge found this had no relevance since the record was undisputed that Barnett was mentally capable to stand trial and knew the difference between right and wrong.
Barnett's only possible defense to the slaying was that he shot Harmon in necessary self defense of himself or his brother. His own intelligence had no bearing on whether or not he reasonably had ground to fear for his own or his brother's life or safety.Robinson v. State, 434 So.2d 206, 207 (Miss. 1983).
Finding no error, we affirm.
AFFIRMED.
ROY NOBLE LEE, C.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
DAN M. LEE, P.J., dissents.