LEE, J.,
for the Court:
¶ 1. On February 7, 1997, Christopher Braxton Parker was indicted for the murder of David Earl Jordan. On the 19th and 20th days of August, 1997, a trial was held, and Christopher Parker was found guilty for the murder of David Earl Jordan and given a life sentence. From this trial, Christopher Parker appeals and alleges that the trial court committed error in not allowing Parker to give the jury a manslaughter instruction and thereby excluding his defense of a lesser-included-crime. Finding his argument without merit, we affirm.
FACTS
¶ 2. On October 7, 1996, several events took place which eventually lead to the murder of David Earl Jordan. Testimony revealed that on this day Maggie Jordan, David Jordan’s wife, had an obligation to appear in court and be on standby as a witness in an ongoing trial. David Jordan was not currently employed and anticipated spending the day with Maggie Jordan; however, Maggie Jordan did not allow David Jordan to go with her to the courthouse. David Jordan remained at home and eventually was discovered spending his spare time at the house of Sylvia Pierre, a friend of Maggie Jordan.
¶ 3. At the trial, testimony revealed that while at the house of Sylvia Pierre, David Jordan consumed alcohol to the point of appearing to be intoxicated. Later, Maggie Jordan stopped at Sylvia Pierre’s house and found David Jordan inside Pierre’s dwelling. Thereafter, a fight ensued between Maggie and David Jordan. During the course of the fight there were exchanges of physical violence between the two, and Maggie Jordan telephoned the sheriffs department. After placing the telephone call to the sheriffs department, Maggie Jordan left Ms. Pierre’s house and went to her and David’s mobile home to meet the deputy sheriffs. After Maggie Jordan had returned home and talked with the deputies, she took a visiting friend to his house because he had a prior babysitting obligation. Ultimately, the friend did not have to babysit, and they returned to the Jordans’ mobile home. During this time, Sylvia Pierre delivered David Jordan to the Jordans’ residence, and he was at *523 the residence when Maggie and the friend returned to the mobile home.
¶ 4. Maggie Jordan’s testimony revealed that David Jordan still appeared to be heavily intoxicated and he possessed a machete. Maggie Jordan testified that David Jordan threatened her with the machete and caused the machete to puncture holes in the front door of the mobile home. A second set of deputies were dispatched to the Jordans’ mobile home. When they arrived, Maggie Jordan removed the machete from David Jordan’s possession and placed it by the front door. No arrests were made, the deputies simply issued warnings to Maggie and David Jordan.
¶ 5. Maggie Jordan further testified that shortly after the deputies had left, David Jordan continued making verbal threats towards her and another physical confrontation ensued between them. Michelle Lappert, a friend, guest and the ex-girlfriend of Christopher Parker, had to separate Maggie and David Jordan. At this time, both Lappert and Parker believed Lappert was pregnant with Parker’s child. Lappert testified that while she attempted to separate Maggie and David, David Jordan was aiming for Maggie and struck her in the lip with a hair spray can. Lappert testified that the argument then became focused between her and David Jordan and Maggie Jordan left the mobile home. Lappert proceeded to calm down David Jordan.
¶ 6. During David Jordan and Lappert’s confrontation, Maggie Jordan went to the “corner store” and made telephone calls searching for help with David Jordan. Maggie Jordan had previously made a telephone call to Sylvia Pierre’s house asking for help from Parker; however, Ms. Pierre talked Parker out of getting involved in the situation which existed. While at the store Maggie Jordan made her second telephone call to Sylvia Pierre’s house. Maggie Jordan talked with Christopher Parker and explained that David was being violent and had struck her and Michelle Lappert.
¶ 7. After speaking with Maggie Jordan, Christopher Parker exited Sylvia Pierre’s house and met Pierre outside, where Pierre and her son were admiring the neighbor’s horses. Parker explained that Maggie Jordan needed help because David was beating Michelle and he had to go over to the Jordans’ residence. Christopher Parker went back to Sylvia Pierre’s house and retrieved a M-l carbine from her house. The M-l had the capability of holding 15 rounds of ammunition and was fully loaded. Sylvia Pierre testified that she tried to talk Parker out of taking the gun and going to the Jordans’ residence, but to no avail. Parker had a friend drive him, Sylvia Pierre, and her son in the friend’s vehicle to the Jordans’ mobile home. Approximately five minutes later, they arrived at the Jordans’ residence.
¶ 8. When they arrived David Jordan was outside of the mobile home pacing in front of the Jordan’s automobile. Maggie Jordan exited the trailer and met Parker while he was still in the automobile and repeated some of the events of the day which included the fact that David Jordan had struck Michelle Lappert in the face. Parker immediately exited the vehicle possessing the gun and aimed the gun at David Jordan. Parker pulled the trigger, but the gun did not fire. Parker proceeded to attempt to unjam the gun and instructed David Jordan to run. David Jordan did not move. Eventually, Parker unjammed the gun, and emptied the gun containing fifteen rounds of ammunition. Thirteen bullets struck David Jordan and inflicted fatal injuries. Parker got back in the vehicle, and Parker, Sylvia Pierre, her son and Parker’s friend left the Jordans’ residence.
¶ 9. After the vehicle containing Parker had driven away, Maggie Jordan “hollered.” It was then that Michelle Lappert exited the mobile home. Maggie Jordan instructed Michelle Lappert to call 911. An ambulance arrived and transported *524 David Jordan to Gulfport Memorial Hospital where he was pronounced dead.
ISSUE: WHETHER THE TRIAL COURT ERRED IN NOT GRANTING THE APPELLANT A MANSLAUGHTER JURY INSTRUCTION.
¶ 10. Parker argues he was entitled to the manslaughter jury instruction because a reasonable jury could not on the evidence exclude the lesser-included-offense of heat of passion manslaughter beyond a reasonable doubt. Parker further argues that the record contains sufficient evidence that David Jordan was in a drunken state and violent mood and that Parker had been informed by Maggie Jordan, David Jordan’s wife, of Jordan’s violent behavior toward herself and Parker’s ex-girlfriend, Michelle Lappert. Furthermore, Sylvia Pierre’s testimony classified Parker as “irrational.” Parker argues that all of the aforementioned facts warrant giving a heat of passion, manslaughter jury instruction.
¶ 11. In Graham, the Mississippi Supreme Court defined heat of passion as “a state of violent and uncontrollable rage engendered by a blow or certain other provocation given, which will reduce a homicide from the grade of murder to that of manslaughter.” Graham v. State, 582 So.2d 1014, 1017-18 (Miss.1991). The passion or anger must suddenly be aroused by some immediate and reasonable provocation, by words or acts of one at the time and includes an emotional state of mind characterized by anger, rage, hatred, furious resentment, or terror. Id. at 1018. Moreover, the passion felt by the accused “should be superinduced by some insult, provocation, or injury, which would naturally and instantly produce, in the minds of ordinarily constituted men, the highest degree of exasperation.” Barnett v. State, 568 So.2d 1377, 1379 (Miss.1990) (quoting Preston v. State, 25 Miss. 383 (1853)).
¶ 12. A review of the record does not reveal facts which would naturally and instantly provoke Parker or any other “ordinarily constituted man” to reach the highest degree of exasperation and result in the taking of an individual’s life and, therefore, warrant giving the jury a manslaughter jury instruction. The record does reflect that Parker appeared to be angry; however, the facts in this case do not warrant the provocation of anger that should have resulted in the taking of David Jordan’s life. The supreme court has stated that “a high degree of sudden and resentful feeling will not alone palliate an act of homicide committed under its influence.” Windham v. State, 520 So.2d 123, 127 (Miss.1987) (quoting Preston v. State, 25 Miss. 383, 387 (1853)).
¶ 13. At trial, testimony revealed that Parker had received a telephone call from Maggie Lou Jordan while at Sylvia Pierre’s house. Ms. Jordan was asking for assistance from Parker because David Jordan had been beating her and had struck Michelle Lappert, Parker’s ex-girlfriend, in the mouth. As a result of Ms. Jordan’s pleas for help, Parker made arrangements to go and assist Ms. Jordan and his ex-girlfriend. Ms. Pierre testified that Parker obtained a gun from her but he only obtained it for protection; however, the facts surrounding the shooting could lead the mind of a reasonable juror to believe otherwise. The drive to the Jordan’s residence took approximately five minutes which takes away any element of instant provocation. Once Parker arrived at the Jordans’ residence,' Ms. Jordan repeated the same story of the day’s events to Parker relative to Jordan beating her and striking Michelle Lappert in the mouth. No additional information was given to Parker in respect to David Jordan’s actions that could have provoked a new fit of rage to support Parker’s argument that he killed Jordan in the heat of passion.
¶ 14. Without seeing or talking to Michelle Lappert to confirm Ms. Jordan’s story and determine the extent of her injuries, Parker exited the vehicle he had arrived in while possessing the gun he had brought. When Parker initially attempted *525 to fire the gun at Jordan, it jammed. While Parker proceeded to manipulate and unjam the gun, he instructed David Jordan to run. Once the gun was unjammed, Parker shot at David Jordan fifteen times, striking Jordan with thirteen bullets.
¶ 15. At the time Parker shot Jordan, Jordan was not in close proximity to Lap-pert, Parker’s ex-girlfriend. In fact, Jordan was outside while Lappert was in the mobile home. Additionally, Jordan was unarmed and was not making any physical or verbal threats to Parker or other individuals present. Furthermore, forensic evidence presented by Dr. Paul McGarry proved that all thirteen bullet wounds inflicted by Parker entered Jordan’s back, again negating any ill intentions from Jordan at the time of his shooting. Dr. McGarry testified that David Jordan had “thirteen clear entry wounds and additional reentry wounds all of which came from the back of his body in a forward direction. There were wounds of the left side and of the left part of his abdomen, but all of the wounds were going in a forward direction coming from behind him. The majority of the wounds, thirteen coming in the back of his body, were close together in space and close together in direction indicating that they were inflicted on him when he was in a nonmoving position from behind and below his body going in a forward, upward, rightward direction.”
¶ 16. In Barnett v. State, 563 So.2d 1377, 1379 (Miss.1990), Barnett and the victim were involved in an argument. Testimony reflected that the victim had a knife and had displayed such knife to Barnett. Barnett then proceeded to go to his father’s trailer to obtain a gun and then to his trailer to obtain the necessary bullet. Id. at 1378. Barnett came back outside and shot the victim. Id. Barnett had requested that he be allowed a jury instruction based on heat of passion manslaughter which the trial court refused. Id. at 1379. The Mississippi Supreme Court refused the manslaughter instruction stating, “there simply was no evidence in this record to support a manslaughter instruction.” Id. at 1380. Unlike the circumstances in Barnett, Parker did not have physical contact with Jordan. Additionally, Jordan made no visual or verbal threats. In fact, Parker only had mere hearsay of violent actions previously taken by Jordan on which he tried to justify his actions as a heat of passion crime. ,
¶ 17. In Calvin v. State, 175 Miss. 699, 168 So. 75, 76 (1936), the appellant and the victim had been in what witnesses described as a “friendly struggle”. The struggle escalated and the appellant declared his purpose to get his gun and kill the victim, as well as using other expletives indicating malice. “[I]t was a question for the jury, even if it would have been manslaughter if the killing had occurred instantaneously, or immediately after the struggle, before there was sufficient time for deliberation and reason.” Id. at 76. Similar to Calvin, Parker indicated he had time for deliberation when he implied his purpose to Jordan. Parker displayed the gun, it jammed, and while Parker was unjamming the gun Parker advised Jordan to run. As previously mentioned, trial testimony reflected that Parker was angry; however, “[tjhere must not only be passion and anger to reduce a crime to manslaughter, but there must be such circumstances as would indicate that a normal mind would be roused to the extent that reason is overthrown and that passion usurps the mind destroying judgment.” Id. at 76.
¶ 18. Under the circumstances reflected in the record, a normal mind would not be roused to the extent that reason is overthrown and that passion usurps the mind destroying judgment. Calvin v. State, 175 Miss. 699, 168 So. 75, 76 (1936). It has been stated by the Mississippi Supreme Court, “there are people who refuse to restrain the infirmities of temper, but the law does not excuse their so doing unless the circumstances are adequate to show great provocation.” Id. In the instant case there was no “great provocation” by Jor *526 dan to justify Parker having taken Jordan’s life and which would excuse Parker’s actions in doing so.
¶ 19. This Court acknowledges that “[i]f there is any evidence which would support a conviction of manslaughter, an instruction on manslaughter should be given.” Graham v. State, 582 So.2d 1014, 1018 (Miss.1991). In Colburn v. State, 431 So.2d 1111, 1114 (Miss.1983), the Mississippi Supreme Court stated “[o]ur law is well-settled that jury instructions are not given unless there is an evidentiary basis in the record for such.” The record does not establish sufficient evidence to show Christopher Parker did not act with malice aforethought and was provoked to the level of enraging feelings which would cause an individual to take another person’s life and require a jury instruction based on manslaughter as said crime is defined in Miss.Code Ann. § 97-3-35 (Rev.1994). For the aforementioned reasons, we, therefore, find no reversible error by the trial court.
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
BRIDGES, DIAZ, IRVING, PAYNE, AND THOMAS, JJ., CONCUR.
SOUTHWICK, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McMILLIN, C.J., AND KING, P.J., AND COLEMAN, J.