CARLTON, J., for the Court.
 

 ¶ 1. Jermaine Robinson was convicted in the Hinds County Circuit Court for the murder of Walter Winters, Jr. He was sentenced to life in the custody of the Mississippi Department of Corrections.
 

 ¶ 2. Robinson argues on appeal that: (1) the trial court erred in its denial of a mistrial when the prosecutor commented on Robinson’s right to remain silent, which Robinson submits violated his fundamental right to a fair trial; (2) the trial court abused its discretion in its denial of jury instructions D-4 and D-5 dealing with manslaughter and, thereby, denied Robinson his fundamental right to present to the jury his defense of heat-of-passion manslaughter; and (3) the trial court abused its discretion when it improperly denied Robinson the right to impeach State witness LaToya Johnson during the prosecution’s case-in-chief. We find no error and affirm Robinson’s conviction and sentence.
 

 FACTS
 

 ¶ 3. On November 13, 2004, Johnson and Winters attended a family gathering in Flora, Mississippi. Johnson and Winters returned to Johnson’s home in Jackson around midnight. Johnson was not feeling well, so Winters helped her inside of her home and promised to check on her later that morning. Winters returned to Johnson’s home around 2:00 a.m., while Johnson was still in bed.
 

 ¶4. On that same evening, Robinson spent the evening and early morning at a bar near Johnson’s home. Robinson and Johnson have a child together and dated for approximately eighteen months before Johnson broke off the relationship. Robinson was still allowed to come to Johnson’s home and see the child when Johnson would let him. Robinson telephoned Johnson at 5:33 a.m. on November 14, 2004. Johnson did not answer. Robinson called a second time, and Johnson answered. Robinson asked to come over, but Johnson told him that she had company. Robinson asked to speak to Winters, and Johnson gave him the cell phone. Winters told Robinson that he was not dating Johnson and then hung up the phone on Robinson. Robinson called back, demanding to speak to Winters, whom Robinson testified began to curse at him. Robinson continued to call Johnson for a total of seventeen times. Robinson testified that Winters told him to “bring [his] a* * down there,” because Winters had something for him.
 

 ¶ 5. Robinson, armed with a .380 caliber pistol, went to Johnson’s house and walked around to the side steps leading into the house. When Robinson was on the first or second step, Winters opened the door. Robinson testified that he saw Winters reach in his pocket for a dark handle with “a piece of [a] shiny thing” attached. Rob
 
 *573
 
 inson fired his gun four times as he ran from the house. Johnson testified that after hearing the four gunshots, she saw Winters stagger through the house. Winters asked her to call the police, and then he collapsed in the hallway.
 

 ¶ 6. Officer Tawanda Armstrong of the Jackson Police Department testified that she responded to the shooting at 6:12 a.m. When she arrived on the scene, she found Winters dead in the hallway. Crime Scene Investigator James Chambers testified that he removed a black-handled kitchen knife from Winters’s right hand. Chambers stated that the knife blade was in Winters’s shirt sleeve.
 

 ¶ 7. Robinson continued to call Johnson after the shooting, while the police were on the scene. Jackson Police Officer Maurice Kendrick, who arrived at Johnson’s home at approximately 6:15 a.m., testified that during one phone call, Johnson held out the phone so that he could hear Robinson on the other end. Officer Kendrick stated that he heard someone who Johnson identified as Robinson say “he was going to spend the rest of his life in jail because of her.” Officer Kendrick also heard the caller teh Johnson that: it was all her fault; she should have told the police something else; and now he would spend the rest of his life in jail.
 

 ¶ 8. Detective Sharesa Sparkman testified that the Jackson Police Department arrested Robinson on December 8, 2004. She issued Robinson his
 
 Miranda
 
 warnings, and after doing so, Robinson told the police that he was nowhere near the murder scene at the time Winters was shot, and he wanted to know “how did police figure [he] shot Winters.”
 

 ¶ 9. A Hinds County grand jury indicted Robinson for depraved-heart murder pursuant to Mississippi Code Annotated section 97-3-19(1) (Rev.2006). After a trial, the jury convicted Robinson of murder. He was sentenced to life in the custody of the Mississippi Department of Corrections. Robinson now appeals his conviction and sentence.
 

 DISCUSSION
 

 I. Prosecutorial Comments on Defendant’s Right to Remain Silent
 

 ¶ 10. Appellate review of lawyer misconduct during opening statements or closing arguments is “whether the natural and probable effect of the [alleged] improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created.”
 
 Dora v. State,
 
 986 So.2d 917, 921(¶8) (Miss.2008) (citing
 
 Sheppard v. State,
 
 777 So.2d 659, 661(¶7) (Miss.2001)). The standard of review for denial of a motion for a mistrial is abuse of discretion.
 
 Id.
 
 (citations omitted).
 

 ¶ 11. Robinson argues that the trial court erred in its denial of his request for a mistrial when the prosecutor improperly commented on his right to remain silent. Robinson submits that the denial of a mistrial violated his fundamental right to a fair trial. During the State’s cross-examination of Robinson, the prosecutor asked him:
 

 When is the first time that you have ever told any human being that Walter Winters, who is now dead so that I can’t ask him if he said this, conveniently, when have you ever told anybody that Walter Winters said bring you’re a* ⅞ down here because I’m going to do something to you?
 

 Defense counsel objected, arguing that Robinson had a right to remain silent. The prosecutor again referenced Robinson’s allegations regarding Winters’s statement during the closing argument.
 

 
 *574
 
 ¶ 12. Robinson cites
 
 Emery v. State,
 
 869 So.2d 405, 410 (¶¶ 29-30) (Miss.2004), in which the Mississippi Supreme Court reversed Odis Emery’s burglary conviction due to attempts by the prosecution to impeach the defendant with his post-arrest silence. The facts of
 
 Emery,
 
 however, can be distinguished from the case at hand. In
 
 Emery,
 
 the defendant exercised his right to remain silent until testifying at trial.
 
 Id.
 
 at 408(¶ 13). In the present case, Detective Sparkman testified that after she arrested Robinson and read him his
 
 Miranda,
 
 rights, Robinson told her that he was “nowhere near the area where the murder [had] occurred,” and wanted to know “how we figured that he [had] murdered the guy.” At trial, however, Robinson testified that he was in fact at the scene of the shooting, but he acted in self-defense.
 

 ¶ 13. Robinson also cites
 
 Quick v. State,
 
 569 So.2d 1197, 1199 (Miss.1990), in which the supreme court reversed the aggravated assault conviction of James Quick due in part to the prosecutor’s inquiry as to whether Quick made certain complaints or explanations after receiving
 
 Miranda
 
 warnings. Unlike the facts before us, the court in
 
 Quick
 
 held that there was no evidence of a voluntary admission by the defendant after being advised of his
 
 Miranda
 
 rights.
 
 Id.
 
 In reiterating that the protections of the Fifth Amendment to the United States Constitution prohibit a prosecutor from commenting on post-Mmro& silence, the court explained that the right to remain silent after being advised of one’s
 
 Miranda
 
 rights exists even if the defendant does not have the benefit of legal counsel.
 
 Id.
 

 ¶ 14. In
 
 Doyle v. Ohio,
 
 426 U.S. 610, 618, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the United States Supreme Court held that it would be fundamentally unfair and a deprivation of due process to allow an arrested person’s silence to be used to impeach an explanation subsequently offered at trial. The Supreme Court later clarified its holding in
 
 Doyle,
 
 stating that prosecutorial statements that are either intended to or have the necessary effect of raising a negative inference simply because of the defendant’s exercise of his right to remain silent are prohibited by
 
 Doyle. Anderson v. Charles,
 
 447 U.S. 404, 409, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980). However, where a prosecutor’s questions and comments are aimed at eliciting an explanation for an arguably prior inconsistent statement, no
 
 Doyle
 
 violation occurs.
 
 Id.
 

 ¶ 15. In
 
 Puckett v. State,
 
 737 So.2d 322, 351(¶ 86) (Miss.1999), the defendant made statements after being placed under arrest that were inconsistent with his assertions at trial. The Mississippi Supreme Court held that the prosecutor’s questions upon cross-examination were admissible under Mississippi Rule of Evidence 613 to show that Larry Matthew Puckett’s prior statements were inconsistent with his statements at trial.
 
 Id.
 
 The court stated that:
 

 because Puckett did not invoke his right to silence, and made voluntary statements, the
 
 Miranda
 
 and
 
 Doyle
 
 provisions do not apply. To hold otherwise would not only afford the defendant the right not to incriminate himself by remaining silent but would also afford him the right not to incriminate himself by making voluntary statements which are inconsistent with his testimony at trial. This would ultimately grant a defendant who chooses to be a witness in his own defense more protection than that granted to any other witness.
 

 Id.
 
 at 350-51(¶ 85).
 

 ¶ 16. Similarly, in
 
 Shell v. State,
 
 554 So.2d 887 (Miss.1989),
 
 rev’d on other grounds,
 
 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990), the defendant testified at
 
 *575
 
 trial to a version of the events that had never been given to the sheriffs department. In doing so, the trial court held that the defendant opened himself up to impeachment.
 
 Id.
 
 at 897. Once a defendant relates a new sequence of events on direct examination, “the prosecution [is] well within its rights on cross-examination to inquire further about the novelty of the story.”
 
 Id.
 
 The supreme court, thus, held that the defendant “opened this door on direct examination of his own accord, and he should not be allowed to derive an unfair advantage (in effect, penalizing the prosecution) by having done so.”
 
 Id.
 

 ¶ 17. In the present case, Robinson called Johnson on her cell phone immediately after the shooting and made incriminating admissions. Approximately a month after the shooting, law enforcement provided Robinson with
 
 Miranda
 
 warnings, and upon being so advised, he chose not to exercise his right to remain silent. Instead, he made oral statements to law enforcement disclaiming his connection to the shooting.
 
 [1]
 
 Therefore, this case presents no
 
 Doyle
 
 violation or violation of post-Miranda silence.
 

 ¶ 18. At trial, Robinson testified to a different sequence of events than he originally told detectives after his arrest, claiming the defenses of self-defense and heat-of-passion manslaughter. He put his credibility in issue by taking the stand and testifying to a different scenario than the one he provided previously to law enforcement. In short, his trial testimony factually conflicted with his prior statements. Therefore, we find that the prosecutor’s questions upon cross-examination were admissible under Mississippi Rule of Evidence 613 to show that Robinson’s prior statements were inconsistent with his statements at trial and to inquire about the novelty of the new sequence of events stated at trial.
 

 ¶ 19. However, even if the prosecutor’s comments were improper, and we do not so find, we find that the record reflects overwhelming evidence of Robinson’s guilt, and the comments, therefore, constitute harmless error.
 
 See Gossett v. State,
 
 660 So.2d 1285 (Miss.1995) (supreme court found the prosecutor’s comments, though improper, were not reversible, because of the overwhelming weight of evidence against the accused, including his own admission and testimony that he shot and killed the victim). The “harmless error” holding in
 
 Gossett
 
 is further explained in
 
 Riddley v. State, 777
 
 So.2d 31, 35(¶ 12) (Miss.2000), where the supreme court held that “even errors involving a violation of an accused’s constitutional rights may be deemed harmless beyond a reasonable doubt where the weight of the evidence against the accused is overwhelming.” This issue is without merit.
 

 II. Denial of Jury Instructions for Heat-of-Passion Manslaughter
 

 ¶ 20. Robinson argues that the trial court abused its discretion by denying jury instructions D-4 and D-5, dealing with manslaughter. Robinson argues that the denial of a manslaughter instruction ultimately deprived him of his fundamental right to present to the jury his defense of heat-of-passion manslaughter. The trial court did, however, grant Robinson’s self-defense instruction.
 

 ¶ 21. This Court has held that in reviewing the denial of a jury instruction, we must:
 

 consider not only the denied instruction but all of the instructions which were
 
 *576
 
 given to ascertain if error lies in the refusal to give the requested instruction .... A defendant is entitled to have instructions given which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in another instruction, or is without foundation in the evidence.
 

 Guillen v. State,
 
 825 So.2d 697, 698(¶ 5) (Miss.Ct.App.2002) (internal citations omitted).
 

 ¶ 22. The supreme court has further stated that:
 

 The refusal of a timely requested and correctly phrased jury instruction on a genuine issue of material fact is proper, only if the trial court — and this Court on appeal — can say, taking the evidence in the light most favorable to the party requesting the instruction, and considering all reasonable favorable inferences which may be drawn from the evidence in favor of the requesting party, that no hypothetical, reasonable jury could find the facts in accordance with the theory of the requested instruction.
 

 Hill v. Dunaway,
 
 487 So.2d 807, 809 (Miss.1986) (citations omitted).
 

 ¶ 23. Robinson argues that no other jury instruction addressed the issue of heat of passion or permitted the jury to consider the theory of manslaughter. Heat of passion has been defined as follows:
 

 a state of violent and uncontrollable rage engendered by a blow or certain other provocation given, which will reduce a homicide from the grade of murder to that of manslaughter. Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment or terror.
 

 Underwood v. State,
 
 708 So.2d 18, 36(¶ 54) (Miss.1998) (quoting
 
 Tait v. State,
 
 669 So.2d 85, 89 (Miss.1996)). The passion felt by the person committing the act “should be superinduced by some insult, provocation, or injury, which would naturally and instantly produce, in the minds of ordinarily constituted men, the highest degree of exasperation.”
 
 Graham v. State,
 
 582 So.2d 1014, 1018 (Miss.1991) (quoting
 
 Barnett v. State,
 
 563 So.2d 1377, 1379 (Miss.1990)). Additionally, “there must be such circumstances as would indicate that a normal mind would be roused to the extent that reason is overthrown and passion usurps the mind destroying judgment.”
 
 Parker v. State,
 
 736 So.2d 521, 525(¶ 17) (Miss.Ct.App.1999) (quoting
 
 Calvin v. State,
 
 175 Miss. 699, 168 So. 75, 76 (1936)).
 

 ¶ 24. Robinson testified that he went to Johnson’s house after Winters allegedly told him to “get [his] a* * down there.” Robinson testified that Winters’s alleged statement scared him, and also that he went to Johnson’s house “out of anger.” However, it is well-settled law that “words alone ... are not enough to require a heat-of-passion instruction.”
 
 Myers v. State,
 
 832 So.2d 540, 542(¶10) (Miss.Ct.App.2002). Thus, we find that Winters’s alleged threat to Robinson during the phone call was not sufficient to incite “violent and uncontrollable rage.”
 
 Underwood,
 
 708 So.2d at 36(¶ 54).
 

 ¶25. Robinson also testified that he shot Winters when Winters opened the door, because he thought Winters had a “gun or a knife.” Although police found a knife in Winters’s pocket, Robinson admitted at trial that he did not know at the time of the shooting whether Winters actually had a weapon; he just knew that Winters “had an object.” The supreme court has held that “malice, or deliberate
 
 *577
 
 design, may be inferred from use of a deadly weapon.”
 
 Phillips v. State,
 
 794 So.2d 1034, 1037(¶ 11) (Miss.2001) (citing
 
 Carter v. State,
 
 722 So.2d 1258, 1263(¶ 21) (Miss.1998)). Therefore, a jury instruction for murder, and not manslaughter, is appropriate in the case at bar.
 

 ¶ 26. Viewing the evidence in the light most favorable to Robinson, we find that no reasonable jury could have found Robinson not guilty of murder, and instead convicted him of heat-of-passion manslaughter. We note that in its discretion, the trial court granted Robinson a self-defense instruction, even though the factual basis to support such an instruction was tenuous at best. Since we find that there was not sufficient evidence in the record to support a jury instruction for manslaughter, this issue is without merit.
 

 III. Denial of the Opportunity to Impeach the State’s Witness
 

 ¶ 27. Robinson argues that the trial court abused its discretion when it denied him the right to impeach Johnson, a State witness, during the prosecution’s case-in-chief. However, we note that the court allowed Robinson to recall Johnson during his case-in-chief for inquiry once the defense had laid the proper evidentiary foundation. Therefore, the trial court did not preclude testimony; rather, the court controlled the order of the testimony for the purposes of providing the proper evi-dentiary foundation for the admission of testimony. Mississippi Rule of Evidence 611(a) clearly recognizes the authority to the trial judge to “exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to ... make the interrogation and presentation effective for the ascertainment of the truth.”
 

 ¶ 28. However, even though the trial court allowed the testimony, albeit in the defense’s case-in-chief, Robinson frames his argument as a denial of the opportunity to impeach this State’s witness. The supreme court has held that the standard of review for the relevancy and admissibility of evidence is abuse of discretion, and “reversal may be had only where that discretion has been abused.”
 
 Craft v. State,
 
 656 So.2d 1156, 1163 (Miss.1995).
 

 ¶ 29. During Johnson’s cross-examination, defense counsel sought to impeach her testimony regarding Winters’s statement to Robinson: “I am not afraid to die.” The trial court ruled that Winters’s statement was admissible under two hearsay exceptions — Rules 803(3) and 804(b)(2) of the Mississippi Rules of Evidence. The State then objected to the statement’s relevance on the grounds that there had not been any evidence presented showing that Winters provoked Robinson. The trial court ruled that once the proper evidentia-ry foundation was laid, making the statement relevant, Winters’s statement would be admissible. As a result, Robinson was allowed to recall Johnson as a witness during his case-in-chief, and the trial court permitted testimony by Johnson as to Winters’s statement.
 

 ¶ 30. Despite the fact that Johnson’s testimony regarding Winters’s statement was ultimately permitted, Robinson argues that virtually all of the vitality of the impeachment was lost due to the trial court’s abuse of discretion in denying the opportunity of impeachment during cross-examination. However, we find that Robinson was allowed a full opportunity to question Johnson regarding Winters’s statement during his case-in-chief, and the trial judge was within his authority to determine the mode and order of such testimony. This issue is without merit.
 

 ¶ 31. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SEN
 
 *578
 
 TENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ„ CONCUR.
 

 [1]
 

 . Mississippi Rule of Evidence 801(d)(2) allows a statement by a party to be admitted into evidence if the statement is offered against a party, and it is the party’s own statement, either in an individual or a representative capacity.