986 So.2d 320 (2007)
Tremayne Omar MULLEN, Appellant
v.
STATE of Mississippi, Appellee.
No. 2006-KA-01671-COA.
Court of Appeals of Mississippi.
September 11, 2007.
Rehearing Denied April 29, 2008.
*322 George T. Holmes, Jackson, Attorney for Appellant.
Office of the Attorney General by Billy L. Gore, Attorney for Appellee.
Before KING, C.J., GRIFFIS and BARNES, JJ.
GRIFFIS, J., for the Court.
¶ 1. Tremayne Mullen was convicted for the murder of Lerome Baker. Mullen appeals and argues that: (1) he was entitled to a heat of passion manslaughter instruction; (2) the jury instructions for culpable negligence manslaughter and depraved heart murder were confusing to the jury or improperly stated the law; (3) his counsel was ineffective with regard to the jury instructions; and (4) the evidence did not support a conviction of murder. We find no error and affirm.

FACTS
¶ 2. On May 3, 2006, a birthday party was held for Mullen and Terry Willis in Grenada, Mississippi, at the residence of Lerome Baker. In addition to Mullen, Willis and Baker, Helen Mullen (Mullen's mother), Aaron Bounds, and Yolanda Johnson were present at this party. The refreshments for the party included whiskey, beer, marijuana, and cocaine.
¶ 3. During the party, Baker and Mullen were heard arguing in a back room. Later, Mullen asked to borrow his mother's vehicle, which she refused. Mullen then asked Baker if he could borrow his car, and Baker also refused. Both his mother and Baker questioned Mullen's sobriety. Mullen then left and returned a short while later with a handgun.
¶ 4. Upon his arrival back at the party, Mullen slammed the handgun on the table and dismissed the attendees with a string of expletives and further told them that if anyone thought he was drunk to come try him. During this tirade, Baker was in a separate room. After finishing his tirade, Mullen picked the gun up off the table and placed it in his pants. At this point in *323 time, Baker returned from his room and sat on the couch. Mullen then pulled out the handgun and once again slammed it back on the table.
¶ 5. While Mullen was still angry, his mother tried to calm him down. An argument ensued, and Mullen's mother told Mullen to "kiss her tail." Mullen responded by telling her to "kiss his tail." Upon hearing this Baker told Mullen, "Man, ya'll need to quit." Mullen then grabbed the gun off the table and asked Baker, "You think this is a game?" Then, Mullen fired one fatal shot into the left side of Baker's forehead from close range.
¶ 6. After firing the shot, Mullen stood there and asked his mother if Baker was all right, to which she responded, "No." Mullen then left.
¶ 7. Mullen was indicted for the murder of Baker. Following a trial held on August 7, 2006, a jury found Mullen guilty of murder. He was then sentenced to life imprisonment. It is from this conviction and judgment that Mullen now appeals.

ANALYSIS

I. Whether Mullen was entitled to a heat of passion manslaughter instruction.
¶ 8. The standard of review for jury instructions was well stated in Agnew v. State, 783 So.2d 699, 702(¶ 4) (Miss. 2001).
Jury instructions are to be read together and taken as a whole with no one instruction taken out of context. A defendant is entitled to have jury instructions given which present his theory of the case, however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.
Id.
¶ 9. On appeal, Mullen argues that there was a factual basis that the act was committed in the heat of passion. Heat of passion has been defined by the supreme court as "a state of violent and uncontrollable rage engendered by a blow or certain other provocation given, which will reduce a homicide from the grade of murder to that of manslaughter." Graham v. State, 582 So.2d 1014, 1017-18 (Miss.1991). Anger alone does not constitute heat of passion, "there must not only be passion and anger to reduce a crime to manslaughter, but there must be such circumstances as would indicate that a normal mind would be roused to the extent that reason is overthrown and that passion usurps the mind destroying judgment." Parker v. State, 736 So.2d 521, 525(¶ 17) (Miss.Ct. App.1999) (quoting Calvin v. State, 175 Miss. 699, 168 So. 75, 76 (1936)).
¶ 10. Here, Mullen became upset at the party and then left the party. Later, he returned armed with a handgun, which he began to brandish before the guests as he spewed expletives. During this time, Baker was not even in the same room. Mullen claims that the argument he had with his mother and then the comment made by Baker caused the heat of passion manslaughter. While the conversation might have been heated with his mother, Baker was a mere bystander to it. He merely stated, "Man, ya'll need to quit." At that point, Mullen had words with Baker and then took the handgun and shot Baker in the head from close range.
¶ 11. From the testimony at trial, there is no evidence to support that anything occurred that would cause "a normal mind to be roused to the extent that reason is overthrown and that passion usurp[ed] the mind destroying judgment." Id. While *324 manslaughter is a lesser-included offense of murder, it is important to note that an instruction was given instructing the jury on culpable negligence manslaughter. We will address that instruction under Mullen's next allegation of error. We find that this allegation of error is without merit.

II. Whether the jury instructions for culpable negligence manslaughter and depraved heart murder were confusing to the jury or improperly stated the law.
¶ 12. Mullen argues that the jury was confused as to the difference between depraved heart murder and culpable negligence manslaughter. Mullen also claims that this confusion was furthered when the State and Mullen's counsel improperly instructed the jury on culpable negligence.
¶ 13. We first look to whether the jury was improperly instructed as to culpable negligence. Jury Instruction No. 6, offered by the State, and Jury Instruction No. 7, offered by the defense, both provided the same definition for culpable negligence. These instructions stated that culpable negligence "is conduct which exhibits or manifests a wanton or reckless disregard for the safety of human life, or such indifference to the consequences of the Defendant's act under the surrounding circumstances as to render his conduct tantamount to willfulness."
¶ 14. Mullen takes exception to the portion of the definition that states "to render his conduct tantamount to willfulness." He argues that there is no such requirement in the statute or case law. Further, Mullen claims that it brings the definition of culpable negligence to deliberation. Mullen is incorrect.
¶ 15. Indeed, the concluding portion of the definition included in the instructions is not found in the statute. However, it can be found in our case law. Speaking of the definition of culpable negligence, the supreme court held that, "[t]his [c]ourt more recently defined manslaughter by culpable negligence as `such gross negligence... as to evince a wanton or reckless disregard for the safety of human life, or such an indifference to the consequences of an act under the surrounding circumstances as to render such conduct tantamount to willfulness.'" Chandler v. State, 946 So.2d 355, 361(¶ 22) (Miss.2006) (quoting Shumpert v. State, 935 So.2d 962, 967(¶ 14) (Miss.2006)) (emphasis added). The jury received proper instruction as to the definition of culpable negligence.
¶ 16. Next, we examine whether there was any potential for confusion that the jury might have had with regard to the difference between depraved heart murder and culpable negligence manslaughter.
¶ 17. Depraved heart murder and culpable negligence differ "simply by degree of mental state of culpability. In short, depraved-heart murder involves a higher degree of recklessness from which malice or deliberate design may be implied." Windham v. State, 602 So.2d 798, 801 (Miss.1992). This distinction can be seen in the jury instructions by comparing the two instructions that defined depraved heart and culpable negligence. Depraved heart was defined as an "act eminently dangerous to others and evincing a depraved heart, regardless of human life." Culpable negligence was defined as murder committed "without a depraved heart regardless of human life by such culpably negligent conduct that exhibited or manifested a wanton or reckless disregard for the safety of human life." Clearly, the difference in the mental state of culpability comes through the jury instructions in that depraved heart murder requires a higher mental culpability, i.e., a depraved heart.
*325 ¶ 18. Mullen argues that the confusion of the jury can be seen from the note they sent out questioning jury instruction number four. The problem with Mullen's allegation is that this jury instruction dealt with the difference between deliberate design murder and depraved heart murder, not culpable negligence manslaughter. The note merely asked, did they have to find both deliberate design and depraved heart to find a verdict of guilty? It was not a question that showed confusion as to the difference between depraved heart and culpable negligence as Mullen suggests.
¶ 19. Therefore, we find that this allegation of error is without merit.

III. Whether Mullen's counsel was ineffective.
¶ 20. Mullen argues that he was denied effective assistance of counsel since his counsel failed to seek proper jury instructions. Specifically, he claims that counsel was deficient for failing to object to improper jury instructions by the State, supplying erroneous instructions on his own, and for requesting a prosecutorial instruction.
¶ 21. To prevail on a claim of ineffective assistance of counsel, Mullen must demonstrate that his counsel's performance was deficient and that this deficiency prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The burden of proof rests with Mullen, and we will measure the alleged deficiency within the totality of circumstances. Hiter v. State, 660 So.2d 961, 965 (Miss.1995). However, a presumption exists that the attorney's conduct was adequate. Burns v. State, 813 So.2d 668, 673(¶ 14) (Miss.2001).
¶ 22. As to Mullen's first two allegations that the jury instructions were erroneous, we have previously stated that the jury instructions were not erroneous. Therefore, these allegations fail the first prong of Strickland.
¶ 23. We now turn to the third allegation, that Mullen's counsel was ineffective because he requested a jury instruction that was commonly given on request of the prosecution. The specific jury instruction that Mullen questions instructed the jury to look to manslaughter if it found that the State failed to prove murder. In a case such as this, with such strong evidence that Mullen shot Baker, it would be permissible trial strategy to try to ensure that the jury knew they were not required to find murder and that a lesser offense was available. This allegation of error does not overcome the presumption that the counsel's conduct was effective. Id.
¶ 24. Therefore, we find that this allegation of error is without merit.

IV. Whether the evidence supported a conviction of murder.
¶ 25. Mullen argues that the evidence presented at trial, when taken in the light favorable to the verdict, could only support a conviction for manslaughter and not murder.
¶ 26. To evaluate whether the evidence given is sufficient, this Court must determine if any evidence may "point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty." Edwards v. State, 469 So.2d 68, 70 (Miss.1985) (citing May v. State, 460 So.2d 778, 781 (Miss.1984)) (emphasis added). If reasonable jurors could have reached different conclusions with respect to every element of the offense, the evidence will be considered sufficient. Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss. *326 2005) (citing Edwards, 469 So.2d at 70). The prosecution receives the benefit of all "favorable inferences that may be reasonably drawn from the evidence" when determining if the evidence presented was sufficient to support the verdict. Smith v. State, 839 So.2d 489, 495(¶ 12) (Miss.2003).
¶ 27. Sufficient evidence to sustain the conviction can be seen easily from a brief recap of the events of the night the shooting took place. During a birthday party, Mullen requested to borrow a vehicle. After Baker and Mullen's mother refused Mullen's request to borrow their vehicles and questioned his sobriety, Mullen left the house. Upon returning, he slammed a handgun down on the table and proceeded to yell expletives at the people in attendance. After he finished his tirade, he placed the handgun back in his pants. Baker, who was not in the room at the time of the tirade, came in and sat on the couch. Mullen then pulled the handgun back out and again slammed it on the table. He then proceeded to go on about how he had been wanting to get Baker for a long time and "didn't care about nothing." At this point, Mullen's mother attempted to calm him down and an argument ensued. Baker then stated, "Man, ya'll need to quit." Mullen responded, "You think this is a game?" Mullen then picked up the handgun off the table and walked over to Baker and fatally shot him in the left side of the forehead at close range.
¶ 28. From this evidence which was presented at trial, malice can be seen from Mullen leaving and returning with a weapon. Likewise, malice is present from his statement that he had been wanting to get Baker for a long time. A rational juror could have concluded that when Mullen left the house he went to get a weapon and then intended to go through with what he had been desiring to do for a long time, "to get Baker." He succeeded by firing a shot at close range, several inches away according to expert testimony. Having found ample evidence to support the conviction of murder, we conclude that this allegation of error contains no merit.
¶ 29. THE JUDGMENT OF THE CIRCUIT COURT OF GRENADA COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO GRENADA COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.