MAXWELL, J., for the Court:
¶ 1. A jury found Keith Duran Sanders guilty of murder after he killed Darryl Baxstrum outside a bar in Philadelphia, Mississippi. On appeal, Sanders argues the circuit court erred in refusing his proposed heat-of-passion manslaughter instruction and that his lawyer was constitutionally deficient. Because there was no evidence Sanders responded to immediate and reasonable provocation when he shot and killed Baxstrum, we find refusal of the manslaughter instruction was proper. Thus, we affirm his murder conviction. Since the record is inadequate to decide Sanders’s ineffective-assistance-of-counsel claims, we dismiss them without prejudice.
Facts and Procedural History
¶2. On April 19, 2003, Sanders approached Baxstrum outside of Curlee’s bar in Philadelphia. Sanders drew a .45-cali-ber pistol from his pocket, and shot Bax-strum three times, puncturing his femoral artery. Baxstrum died from the gunshot wounds, and a Neshoba County grand jury indicted Sanders for murder. Sanders pleaded not guilty and filed a motion for a psychiatric evaluation, claiming he was mentally unfit to stand trial. His purported diminished capacity or incompetency stemmed from brain damage he allegedly suffered after being shot in the head in 2001.
¶ B. The circuit judge appointed Dr. Mark Webb, a forensic psychiatrist, to examine Sanders. Dr. Webb submitted a written report of his findings to the circuit court and parties. Sanders’s case originally proceeded to trial in 2003, and the jury convicted him of murder. But on appeal, the Mississippi Supreme Court reversed Sanders’s murder conviction and remanded for a new trial based on the circuit court’s failure to hold a competency hearing or otherwise find Sanders competent to stand trial. Sanders v. State, 9 So.3d 1132, 1139 (¶ 25) (Miss.2009).
¶4. On remand, the circuit court conducted a competency hearing, during which Dr. Webb testified that, in his expert opinion, Sanders was competent to stand trial. Dr. Webb explained Sanders was rational, calm, and capable of testifying on his own behalf. The defense cross-examined Dr. Webb but offered no independent expert testimony. Based on Dr. Webb’s findings, the circuit court held Sanders was competent to stand trial.
¶ 5. At trial, Trenell Edwards and Parrish Anderson testified in the State’s case. Edwards explained that on the night of the shooting he went to Curlee’s bar to meet Baxstrum and Anderson. While waiting for them to arrive, Edwards held a casual conversation with Sanders outside the bar. Approximately ten minutes after he had talked to Sanders, Edwards saw Sanders approach Baxstrum from behind, pull a gun from his pocket, and open fire on Baxstrum. Anderson’s testimony supported Edwards’s version of the shooting.
¶ 6. Sanders testified in his own defense. He explained that both he and Baxstrum had fathered children with Rhoda Sanders — Sanders’s wife at the time of the shooting. According to Sanders, Bax-strum and Rhoda had rekindled their sexu *778 al relationship while Sanders was recovering from his head injury. Sanders also claimed Baxstrum had previously physically and verbally assaulted him. And he alleged that on the day of the shooting, Baxstrum had driven by Sanders’s home, brandishing a gun as he passed.
¶ 7. Sanders’s version of the shooting differed from the two eyewitnesses’ accounts. Sanders insisted Baxstrum approached him that night, not the other way around. He also offered conflicting testimony as to why he shot Baxstrum. First, he claimed that he “just snapped” and that he could not “really remember what he did.” He later testified he shot Baxstrum because he feared for his life. The jury found Sanders guilty of murder, and the trial judge sentenced him to life imprisonment. Sanders now appeals.
Discussion
¶ 8. On appeal, Sanders argues, (1) the circuit court erred in refusing his proposed heat-of-passion manslaughter jury instruction, and (2) his attorney’s representation was constitutionally deficient.
A. Heat-of-Passion Jury Instruction
¶ 9. Sanders was charged with murder but submitted a manslaughter instruction, D-9, directing the jury to consider whether he had killed Baxstrum in the “heat of passion.” The circuit judge denied his proposed manslaughter instruction, finding no support that the shooting had resulted from immediate provocation.
¶ 10. Manslaughter is “[t]he killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense.... ” Miss.Code Ann. § 97-3-35 (Rev.2006). “[A]n indictment for murder includes the lesser-included charge of manslaughter!.]” State v. Shaw, 880 So.2d 296, 304 (¶ 26) (Miss.2004); Miss.Code. Ann. § 99-7-37(2) (Rev. 2007). But a manslaughter instruction should be refused when the evidence supports only a verdict of murder. Ruffin v. State, 444 So.2d 839, 840 (Miss.1984).
¶ 11. Sanders’s proposed instruction focused on the “heat of passion” portion of the manslaughter statute. “Heat of passion” has been defined as “[a] state of violent and uncontrollable rage engendered by a blow or certain other provocation given, which will reduce a homicide from the grade of murder to that of manslaughter.” Agnew v. State, 783 So.2d 699, 703 (¶ 14) (Miss.2001) (quoting Graham v. State, 582 So.2d 1014, 1017 (Miss.1991)). The “[pjassion or anger” must be “suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time.” Id. (citation omitted). But anger alone is insufficient to support a heat-of-passion jury instruction. See Mullen v. State, 986 So.2d 320, 323 (¶ 9) (Miss.Ct.App.2007). “[T]here must be such circumstances as would indicate that a normal mind would be roused to the extent that reason is overthrown and that passion usurps the mind destroying judgment.” Agnew, 783 So.2d at 703-04 (¶ 14) (citing Graham, 582 So.2d at 1018).
¶ 12. We agree with the circuit judge that Sanders’s testimony that he snapped “does not elevate it to the heat of passion.” As the circuit court put it, “[t]he evidence in this case is that Sanders just walked up and started shooting. I don’t see any passion or anything. Seems to me like it’s murder.” Our review also shows no evidence of sudden provocation between Sanders and Baxstrum in the moments prior to the shooting. Edwards and Anderson testified Sanders had approached Baxstrum from behind without Baxstrum’s knowledge, and then shot him. *779 And Sanders’s own testimony does not support that he was in a state of violent and uncontrollable rage.
¶ 13. Even accepting Sanders’s claims that Baxstrum had previously assaulted him on occasions before the shooting, a heat-of-passion jury instruction is not warranted where a cooling-off period exists between the provocation and the killing. Smith v. State, 76 So.3d 170, 173 (¶ 12) (Miss.Ct.App.2009) (finding the defendant “was not entitled to claim that he was still in the heat of passion over events that happened the day before”); Alford v. State, 5 So.3d 1138, 1143 (¶ 17) (Miss.Ct.App.2008) (“[E]ven if a past argument could be inferred between” the defendant and the victim to explain the defendant’s animosity toward the victim, this is “insufficient to satisfy the heat-of-passion element of manslaughter, as the provocation must be immediate — that is, occurring at the time of the killing.”).
¶ 14. Sanders’s prior knowledge of an alleged relationship between Baxstrum and Rhoda is also insufficient to support the manslaughter instruction here. Without evidence of an immediate and reasonable provocation, a defendant’s suspicion of his or her spouse’s infidelity for some time prior to the murder will not support a heat-of-passion-manslaughter jury instruction. Neal v. State, 15 So.3d 388, 408-09 (¶ 53) (Miss.2009). Because no facts support Sanders’s proposed instruction, we find no error in the circuit court’s refusal of the instruction.
B. Ineffective Assistance of Counsel
¶ 15. Sanders next argues his defense counsel rendered constitutionally deficient assistance. He specifically claims his trial attorney (1) should have sought an independent expert witness to both testify “on the behavioral effects of traumatic brain injury,” and to counter Dr. Webb’s opinion, and (2) was deficient in failing to object to Dr. Webb’s testimony that Sanders was legally sane at the time of the shooting.
¶ 16. To establish ineffective assistance of counsel, Sanders must prove: (1) his attorney’s performance was deficient, and (2) the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). But appellate courts generally do not reach the merits of ineffective-assistance-of-counsel claims on direct appeal. We will only do so where: “(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge.” Wynn v. State, 964 So.2d 1196, 1200 (¶ 9) (Miss.Ct.App.2007) (quoting Wilcher v. State, 863 So.2d 776, 825 (¶ 171) (Miss.2003)).
¶ 17. Because there is no obvious deficiency in Sanders’s counsel’s representation and the State has not stipulated the record is adequate to address Sanders’s claims, we dismiss Sanders’s ineffective-assistance-of-counsel claims without prejudice. Should he chose to do so, Sanders may pursue these claims in an appropriate post-conviction proceeding.
¶ 18. THE JUDGMENT OF THE NESHOBA COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO NESHOBA COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, RUSSELL AND FAIR, JJ., CONCUR. *780 CARLTON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.