# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-00465-COA

**JUSTIN GEORGE JOHNSON**                                           **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                    **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 04/20/2022 |
| TRIAL JUDGE: | HON. DALE HARKEY |
| COURT FROM WHICH APPEALED: | GEORGE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAUREN GABRIELLE CANTRELL |
| DISTRICT ATTORNEY: | ANGEL MYERS McILRATH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/16/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., LAWRENCE AND EMFINGER, JJ.**

**EMFINGER, J., FOR THE COURT:**

¶1. Justin George Johnson was indicted, tried, and convicted for the murder of his wife, Marta Johnson.[1] Having been found guilty of first-degree murder, Johnson was sentenced to life imprisonment in the custody of the Mississippi Department of Corrections. Johnson seeks to have his conviction reversed and the case remanded for a new trial so that the jury may be instructed on the lesser-included offense of heat-of-passion manslaughter.

## FACTS AND PROCEDURAL HISTORY

---

[1] Marta Johnson is also referred to as "Dee Dee" throughout the record and at times within this opinion.

¶2.     Johnson and Marta had been married since 2009.  Johnson testified that his relationship with Marta had "got rough over the years."  He admitted they had fought often, and at times those fights had become physical.  During the last two years, the couple had "split up" several times.  They had been back together for about three months before Marta's death.  While Johnson and Marta had stayed with different relatives for short periods of time, on February 8, 2020, they were homeless and living in their green Chevrolet Trailblazer.  On that particular evening, the couple parked their vehicle in a gravel parking lot near Benndale Super Store to spend the night.  Johnson testified that Marta had drunk some alcohol that day, and they had both smoked marijuana and "done some meth."  Johnson testified that at some point, the pair moved to the back seat of the vehicle to prepare for sleep.  Once in the back seat, he started an argument with Marta by accusing her of infidelity.  Johnson said that Marta admitted for the first time that she had been unfaithful.  Upon her admission, according to Johnson, he slapped her, she then kicked him, and he started pulling her hair. Johnson said they stopped arguing about the infidelity, and "[they] stepped back to cool it down."  Subsequently, he started looking for a pack of cigarettes, a lighter, and a candle. When they were both looking for these items, Johnson said that Marta just started throwing "blankets and stuff" all around.  He admitted that he got aggravated with her actions and "knocked the hell out of her."  According to Johnson, Marta would not stop "trying to move and stuff."  He then grabbed Marta's hair with one hand and her rib cage with the other and threw her from one side of the car to the other, pinning her body against the car door. Johnson said he told her to stop and asked her, "[A]ren't you tired?" but she continued to

2

move around. He admitted that he then threw Marta to the other side of the car. After the second time that he threw Marta, Johnson stated that he heard one of her ribs "pop." After the third time that Johnson threw Marta across the back seat, he placed his foot on her neck, again pinning her body against the car door. Johnson said he continued to look for the missing items while he had her pinned against the door. Marta was pinned to the car door with Johnson's foot on her neck until she quit moving around and her body became limp. Johnson stated that when he removed his foot from Marta's neck, "she was gone." Johnson advised investigators that he did not know if he strangled her or broke her neck. Johnson estimated that these events occurred over a period of an hour and a half. He said that he tried to revive Marta by performing CPR but was unsuccessful. He held Marta's body in the back seat of the vehicle until daylight.

¶3.    On the morning of February 9, 2020, Johnson placed a blanket over Marta's dead body and drove to work just as he would on any normal day. Later that evening Johnson drove the Trailblazer to his Aunt Diane Beuk's home with Marta's body still in the back seat and parked the vehicle behind his aunt's house. Johnson told Beuk that he was having car trouble and needed to leave the vehicle parked at her home for an unspecified amount of time. He also told Beuk that he and Marta had broken up. Johnson's vehicle remained parked behind Beuk's home with Marta's body inside until February 13, 2020. Between February 9 and February 13, Johnson continued to go to work and socialize with friends and family, requiring their assistance to drive him around town and to and from work.

¶4.    On the evening of February 13, 2020, Johnson told a friend that he needed to talk to

his sister, Kelly Havard, and that he needed a ride to her house. On the way to Havard's home, Johnson confessed to his friend that he had killed someone and ultimately admitted that he had killed his wife, Marta. When Johnson arrived at Havard's home, he also confessed to Havard that he had killed Marta, and he told her the whereabouts of Marta's body. Havard called the sheriff, and Marta's decomposing body was found shortly thereafter by Sergeant Heather Horne in the back seat of Johnson and Marta's Trailblazer at Beuk's home.

¶5. Johnson was arrested and was later indicted for Marta's murder. On April 20, 2022, a George County Circuit Court jury found Johnson guilty of first-degree murder. After Johnson's post-trial motions were denied, he appealed. On appeal, Johnson contends that the trial court erred by failing to give the jury a lesser-included offense instruction on heat-of-passion manslaughter as he had requested.

## STANDARD OF REVIEW

¶6. In *Curtis v. State*, 298 So. 3d 446, 450-51 (¶11) (Miss. Ct. App. 2020), this Court held:

> We review de novo the refusal of lesser-included-offense instructions. *Downs v. State*, 962 So. 2d 1255, 1258 (¶10) (Miss. 2007). A defendant has a right to a lesser-included-offense instruction if there is some evidence from which a reasonable juror could find him both not guilty of the indicted offense and guilty of the lesser-included offense. *Gilmore v. State*, 119 So. 3d 278, 286 (¶13) (Miss. 2013). However, "the jury should not be presented with a lesser-included-offense instruction unless the record provides an evidentiary basis for the instruction." *Franklin v. State*, 136 So. 3d 1021, 1026 (¶11) (Miss. 2014) (quotation marks omitted). Therefore, "lesser-included-offense instructions should not be granted on mere speculation." *Id*.

## ANALYSIS

4

¶7.     At trial, Johnson withdrew his heat-of-passion manslaughter instruction and requested that it be combined with the State's proposed instruction, along with the instructions on first-degree murder and second-degree murder. The State did not object to including a second-degree murder instruction in their proposed instruction; however, the State argued that the evidence presented at trial was insufficient to justify a heat-of-passion manslaughter instruction. The trial court heard argument from both the State and the defense concerning the record support for such an instruction. Although the court considered the evidentiary basis for a heat-of-passion manslaughter instruction to be "awful thin," the circuit court granted the defense's request and instructed the attorneys to draft a new instruction during the evening recess.

¶8.     The next morning, when the parties reconvened to complete the jury instruction conference, the circuit judge stated in part:

> Yesterday on the record I had determined that the defense request for a manslaughter instruction was a question for the jury. I would deliver a manslaughter instruction. However, overnight I have reviewed my notes of the testimony and reviewed the statement of the defendant given to law enforcement. I've reviewed especially the case law in this regard and it's now my opinion that the defense – there's insufficient evidence to support a manslaughter instruction being given.

¶9.     In *Graham v. State*, 582 So. 2d 1014, 1017-18 (Miss. 1991), a case similar to the present case, the court described the process of determining whether giving a lesser-included heat-of-passion manslaughter instruction is proper:

> In order to determine whether a lesser-included offense instruction should be submitted to the jury, this Court has developed a test.
>
> A lesser included offense instruction should be granted unless

5

> the trial judge—and ultimately this Court—can say, taking the evidence in the light most favorable to the accused, and considering all reasonable favorable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of the lesser included offense (and conversely not guilty of at least one essential element of the principal charge).

*Gates v. State*, 484 So. 2d 1002, 1004 (Miss. 1986) (quoting *Harper v. State*, 478 So. 2d 1017, 1021 (Miss.1985)). The evidence must warrant an instruction on the lesser-included offense before it can be granted. *Stevens v. State*, 458 So. 2d 726, 731 (Miss. 1984).

Miss. Code Ann. § 97-3-35 (1972) deals with manslaughter committed in the heat of passion. That section reads, "The killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense, shall be manslaughter."

> "Heat of passion" has been defined by this Court as:

> In criminal law, a state of violent and *uncontrollable rage* engendered by a blow or certain other provocation given, which will reduce a homicide from the grade of murder to that of manslaughter. Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment or terror.

*Mullins v. State*, 493 So. 2d 971, 974 (Miss. 1986) (quoting Black's Law Dictionary 650 (5th ed. 1979)). The passion felt by the person committing the act "should be superinduced by some insult, provocation, or injury, *which would naturally and instantly produce, in the minds of ordinarily constituted men, the highest degree of exasperation.*" *Barnett v. State*, 563 So. 2d 1377, 1379 (Miss. 1990) (quoting *Preston v. State*, 25 Miss. 383, 387 (1853)).

(Emphasis added).

¶10.   At trial, Johnson was asked, "So Dee Dee is to blame for what happened to her because you thought she cheated?  That was the reason why you killed her?"  Johnson

6

replied, "No, We were simply arguing over the cigarettes. We had quit arguing about the infidelity and all that. . . . That was a provoking move when she [was] throwing all the clothes all over the car and all, it was just continuing this argument." Johnson refers to the argument over the cigarettes as the "second altercation." According to Johnson, he was "cooling off" from the first argument about the alleged infidelity when the second altercation ensued. In *Sanders v. State*, 103 So. 3d 775, 779 (¶13) (Miss. Ct. App. 2012), this Court reasoned that "a heat-of-passion jury instruction is not warranted where a cooling off period exists between the provocation and the killing." Given Johnson's own testimony and the applicable law, the heat-of-passion instruction was not warranted as a result of Johnson and Marta's argument over alleged infidelity.

¶11.    Johnson argues that Marta provoked him during their "second altercation" about the missing cigarettes by constantly moving around and throwing clothes all over the car. Johnson testified that Marta was not saying anything to him; she was just "grabbing stuff." This Court has held that "simply throwing someone's belongings out during an argument does not amount to reasonable 'provocation of a degree to evoke an uncontrolled response of anger, rage, hatred, furious resentment or terror.'" *Blanden v. State*, 276 So. 3d 1204, 1209 (¶17) (Miss. Ct. App. 2018).

¶12.    As a result of the "second altercation," Marta suffered violent injuries that ultimately ended in her death. According to Dr. Staci Turner, the state medical examiner, Marta had been strangled, and both sides of her voice-box cartilage were fractured. Dr. Turner further testified that Marta's sternum was fractured in two places. "She had fractures in all of her

7

ribs on the right and left side, both in the front and in the back. And she had a small tear in one of her lungs from the rib fractures." According to Dr. Turner, "[t]hese were severe injuries. They typically are seen in something like a car accident or if, say someone fell from a building several stories tall."

¶13. The totality of the injuries suffered by Marta at Johnson's hands, over the course of an hour and a half, is evidence of a deliberate design to cause her death. Again, in a similar case where the victim suffered numerous injuries, the supreme court stated in *Abeyta v. State*, 137 So. 3d 305, 311 (¶12) (Miss. 2014):

> Additionally, "[d]enial *of a manslaughter instruction is proper where the record is clear that the decedent was* [*killed*] *with malice or deliberate design*." *Batiste* [*v. State*], 121 So. 3d [808,] 845 [(Miss. 2013)] (quoting *Simmons v. State*, 805 So. 2d 452, 474 (Miss. 2001)). The pathologist testified that Santiago had been struck five to six times in the face, and three to four times in the side and back of the head, and that she had been strangled for more than one minute before succumbing. Abeyta testified that he had contemplated killing Santiago, then followed through. The evidence was overwhelming that Abeyta killed his mother with deliberate design. We find that Abeyta was not entitled to a heat-of-passion-manslaughter instruction.

(Emphasis added).

¶14. By Johnson's own admission, Marta said nothing to provoke the "second altercation." Instead, Johnson admits that the provoking action was Marta's throwing clothes around the car, fidgeting, moving around, and kicking her legs when she was pinned up against the car door. We find, as did the trial court, that Marta's acts were insufficient provocation "which would naturally and instantly produce, in the minds of ordinarily constituted men, the highest *degree of exasperation*." *Preston*, 25 Miss. at 387 (emphasis added). That Johnson stated he was still looking for the lighter and cigarettes while he had Marta pinned against the door

with his foot on her neck is further evidence that he was not consumed by an "*uncontrollable rage.*" As noted above, the severity of the injuries suffered by Marta over an extended period of time is proof of a deliberate design to cause her death. Accordingly, the jury could not have found Johnson not guilty of first-degree murder and yet found him guilty of heat-of-passion manslaughter. Given the evidence in this case and the applicable caselaw, the evidence is insufficient to warrant an instruction on heat-of-passion manslaughter.

## CONCLUSION

¶15. After reviewing the record, we find no error by the trial court in refusing Johnson's lesser-included-offense jury instruction for heat-of-passion manslaughter. Therefore, Johnson's conviction and sentence for first-degree murder are affirmed.

¶16. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR.**